Robert T. **PARKER**, Administrator of the Estate of Joseph M. Gossner, Deceased

v.

**READING COMPANY.**

Civ. A. No. 29309.

United States District Court
E. D. Pennsylvania.

July 22, 1965.

James E. Beasley, Philadelphia, Pa., for plaintiff.

John J. Dautrich, Philadelphia, Pa., for defendant.

JOHN W. LORD, Jr., District Judge.

Plaintiff administrator brought suit under the Pennsylvania Wrongful Death and Survival Acts, 12 P.S. §§ 1601, 1602, 20 P.S. § 320.601, for the death of Joseph Gossner in a collision between Gossner's car and defendant's locomotive. Evidence was presented for seventeen days before this Court and a jury, resulting in a verdict for plaintiff in the total sum of $100,000. At the close of plaintiff's case, defendant moved for a directed verdict; and again at the close of all the evidence that motion was renewed, being joined with a motion for judgment n.o.v. Rule 50, Fed.R.Civ.P. Both motions having been refused, defendant filed the present post trial motions for judgment n.o.v. or a new trial.

In the course of this long trial, most if not all of the matters presently argued by defendant were raised and ruled upon after argument and the submission of briefs by the parties. The Notes of Testimony, comprising 2316 pages, are replete with rulings, together with reasons and authorities, by the Court on these matters. Since this Court presently adheres to its stated positions in all those respects, it seems that references to those rulings and discussions at trial will suffice, in most instances, to show the basis for the present action of the Court. That action will be to deny the present motions of the defendant.

The Motion for Judgment n. o. v. asserts two matters of law: contributory negligence of plaintiff's decedent, and absence of defendant's negligence. The alternative motion for new trial asserts trial errors in refusing to grant a mistrial; errors in admitting and excluding evidence; and errors in the charge.

Although each party presented eyewitness testimony, and there were over a dozen witnesses in all for each side, there was not much coincidence between the respective versions of the occurrence. The bare facts upon which there was agreement are that on February 7, 1961 at about 1:40 A.M., decedent with five passengers was driving north on Front Street, Philadelphia, under the Elevated street railway superstructure. About 215 feet north of Poplar Street his vehicle collided head-on with defendant's locomotive facing south. Decedent's resulting injuries were such that he may have died within a matter of seconds; but in any circumstance he was found dead on arrival at the hospital.

Front Street is 34 feet wide. A single track runs down the midline of the street, the result of a conversion from the former double track pursuant to authorization by the Public Utility Commission in 1949. The testimony as to the visibility, the degree to which the sides of the street were banked with snow, and whether the train was moving or not, was in sharp contradiction. For the purposes of the motion for judgment n. o. v., however, it must be assumed that the street was dark, N.T. 26, 130, 374, 418, etc.; and that the illumination cast by the nearest street light, some 38 feet away, was to say the least uncertain. (N.T. supra and 204, 447). There was testimony as to the narrowness of passing space between the locomotive and the banked accumulations of snow (N.T. 47–48, 415, 452 and 651) and as to other hazards asserted by plaintiff.

Plaintiff presented his last witness on the seventh day (N.T. 798) and completed introduction of exhibits—in the first instance—on the eighth, which was November 25, 1964. Defendant immediately filed a motion for directed verdict, setting out the grounds presently renewed in this motion for judgment n. o. v. At that time, these matters were briefed and argued at some length. N.T. 820–846. After deliberation, the Court denied the motion, but in that particular instance did not state its reasons for the record. N.T. 847.

## I. MOTION FOR JUDGMENT N. O. V.

The reasons in that instance were in fact, however, the same ones which govern the present motion for judgment n. o. v. They amount in essence to this Court's considered determination that the evidence presented by plaintiff was such that a court would not be warranted in taking from the jury the question of the alleged contributory negligence of the decedent and of absence or presence of negligence on the part of the defendant. Aluminum Co. of America v. Preferred Metal Products, 37 F.R.D. 218, 220 (D.N.J.1965).

██ This Court having determined, in its discretion, that those matters were proper for decision by a jury, and not by a court, there seems no need to mention more than a few of the numerous cases cited by the contenders.

Heavy reliance was placed by defendant upon Cella v. Pennsylvania R.R. Co., 364 Pa. 82, 70 A.2d 638 (1950). It was therein held, two justices dissenting, that a railroad is not negligent in failing to post lights or guards on a standing freight car visible to highway users. A compulsory non-suit was affirmed, and the court specifically declined to consider the question of contributory negligence.

The Cella case has been cited only once since 1950, and that was a reference to it in the dissenting opinion in Coleman v. Dahl, 371 Pa. 639, 646, 92 A.2d 678 (1952). Perhaps more important is the fact that the ruling turned on the circumstance that the freight car was *visible* to highway users, whereas visibility was a crucial issue of fact in the instant case.

However that may be, there are numerous cases, before and after Cella,

showing that physical conditions and circumstances may alter the respective duties of the railroad and those who approach railroad trains and tracks. In fact, the jury was charged to that effect here. N.T. 2257. Such cases include Marfilues v. Philadelphia & Read. Ry. Co., 227 Pa. 281, 283, 75 A. 1072 (1910); Mills v. Pennsylvania R. R., 284 Pa. 605, 608, 131 A. 494 (1925); Baker v. Pennsylvania R. R. Co., 369 Pa. 413, 420, 85 A.2d 416 (1952); Johnson v. Pennsylvania R. R. Co., 399 Pa. 436, 439, 160 A. 2d 694 (1960): and more recently, Williams v. Flemington Tr. Co., 417 Pa. 26, 34, 207 A.2d 762 (March 16, 1965).

As to the negligence of the defendant, the heart of the question was which of the witnesses the jury could believe. There is ample testimony in the record to support a finding that the train was without headlight, bell or lanterns— and gave no warning of its approach. N. T. 30, 32, 127, 137, 308–312. The question was clearly and peculiarly one for determination by a jury.

## II. THE MOTION FOR NEW TRIAL

Since there are numerous assignments of error under this heading, they will be grouped under the seven headings which follow for convenience.

1. Motion for Mistrial.

On the third day of trial, out of the presence of the jury, defendant moved for a mistrial on the ground that remarks of the judge in connection with other proceedings, but overheard by the jury, were prejudicial and grounds for mistrial. N.T. 261. Argument on the motion was heard immediately, and the motion denied. N.T. 261–275.

At the Court's direction, the proceedings to which defendant objected were transcribed and made part of the record. N.T. 276–293. Then the Court gave a cautionary instruction to the jury to make sure that the remarks in question would indeed work no prejudice to defendant. N.T. 294–299. At side-bar thereafter further discussion was had,

and the defendant's motion for mistrial was renewed. N.T. 299–301.

There seems nothing to add to that which is in the record. In the first place, this Court is still of opinion that its remarks in the jury's presence were not reasonably subject to the damaging misconstruction of which defendant is fearful. Moreover, any suspicion of such harm was cured, in the Court's opinion, by its prompt cautionary and curative instruction.

2. Admission and Exclusion of Postmortem Alcohol Tests

This second ground is stated by defendant as follows:

> "The Court erred in excluding, after receiving, evidence that decedent was under the influence of intoxicating liquor and in refusing to charge with respect thereto; also, in refusing to admit evidence of stomach and urine alcohol levels."

This matter is thoroughly documented in the record. Discussion of the question began in Chambers before the commencement of the trial, N.T. 2–7; and continued at side-bar before the trial opened. N.T. 8–16. At the outset, the court had the benefit of briefs from both parties, and determined initially that the alcohol question could not be ruled upon in advance. Whether the testimony of the doctors would be competent to warrant showing the deceased to have been influenced by alcohol would depend entirely upon what they actually said when the time came. N.T. 3.

On the twelfth day of trial, defendant put on the two expert witnesses in connection with the post-mortem tests for alcohol, following further discussion and offers of proof at side-bar. N.T. 1343–1367. Examination and cross-examination of the forensic pathologist, Dr. H. Fillinger, and the toxicologist, Dr. F. Rieders, followed. N.T. 1368–1485. At the close of their testimony, plaintiff moved to strike their testimony as not conforming to the legal standards for the admission of such testimony. N.T. 1487. The Court heard further argu-

ment thereon on that same day (N.T. 1487–1508), and took the problem under further advisement overnight. On the next (13th) day, the court ruled that the evidence was incompetent. N.T. 1510. The reasons and authorities were discussed for the record thereafter. N.T. 1510–1545.

■ Under Pennsylvania law, evidence establishing a degree of intoxication which proves unfitness to drive is required if the jury is to hear anything at all about consumption of alcohol. Wentworth v. Doliner, 399 Pa. 356, 160 A.2d 562 (1960); Fisher v. Dye, 386 Pa. 141, 125 A.2d 472 (1956). Defendant argued that the circumstances of the collision alone bespoke intoxication. But there was no testimony that decedent had been drinking, or that he displayed any outward manifestations of intoxication. Therefore the Court was forced to reject that bootstrap argument. To have agreed with defendant's contention that decedent simply drove head-on into a visible train would have necessitated complete disregard of plaintiff's entire case as to decedent's due care and the negligence of the railroad.

It is, of course, hazardous to attempt compression of the Court's entire evaluation of the evidence, as well as its views of the applicable law, into a few lines here. Especially is that true since so many pages of the record were required for their statement at the time of trial. Suffice it to say that the Court then acted in the careful exercise of its discretion, and presently sees no error in the conclusions reached at that time. N.T. 1516.

Defendant's motion for reconsideration, supported by a brief of authorities, was denied several days later, after further argument. N.T. 2044–2066. Thereupon the jury was instructed, at the close of defendant's case, to disregard the alcohol-test evidence of the pathologist and the toxicologist on the ground, inter alia, that such evidence alone was insufficient

"* * * to warrant a jury in finding the deceased to have been intoxi-

cated to the extent of being unfit to drive, or having consumed alcohol to the extent that you might consider him unfit to drive * * *" N.T. 2070–2072.

■ This Court's views, as expressed in the rulings to be seen in the record, remain unchanged. In fact, there has since been another Pennsylvania decision which reinforces that position. Vignoli v. Standard Motor Freight, Inc., 418 Pa. 214, 210 A.2d 271 (May 25, 1965).

As to the defendant's contention that it was prejudiced by the receiving, and then excluding, of testimony as to postmortem findings of alcohol, the Court is not impressed. Had the verdict gone the other way, plaintiff's ground for complaint on the same score might have been more persuasive.

3. Error in Refusing to Admit Evidence of Widow's Remarriage

In response to an earlier motion of defendant, the Court ruled on the seventh day of trial that evidence of the remarriage of a party is inadmissible. With citation of authorities it held that the rights of the parties entitled to damages in wrongful death and survival actions are fixed at the time of death. N.T. 727.

■ The same point was again raised on the ninth day of trial, with emphasis on the prejudicial aspects of the demeanor of decedent's wife during the trial. N.T. 963. Further argument and discussion of authorities was heard at that time. N.T. 962–985. On the basis of the authorities previously cited, and those discussed in the last-described argument, the court adhered to its previous ruling that evidence of the remarriage was inadmissible. N.T. 985. No error in such action is perceived. (See also N.T. 2020).

4. Exclusion of Evidence of Lack of Liability Insurance

Toward the end of trial, defendant asked, and was denied leave to call the widow of decedent under cross-examination for the limited purpose of eliciting an admission that her deceased husband

carried no liability insurance on his automobile. The stated purpose was

"* * * in order to attack the credibility of the witnesses [passengers] who must, in order to recover in their own cases, make out a case against the Reading Company alone because if they make out a case against Mr. Gossner alone they can't recover." N.T. 2021.

▇ The matter was argued at sidebar, although defendant submitted no authority for the point. Plaintiff argued that the prejudicial effect of a mention of insurance was greater than any bearing on credibility such fact might have. At the time, the Court mentioned the equivocal character of such evidence, in the course of denying the offer. N.T. 2024–2025. The Court's opinion has not changed; it still believes that the evidence would have been irrelevant inconclusive, and prejudicial. Kaplan v. Loev, 327 Pa. 465, 194 A. 653 (1937).

5. Error in Admitting Photographs Taken During Trial, Plaintiff's Exhibits 28–38

▇ A review of the notes of testimony in connection with the use and admission of these exhibits convinces this Court that any possible error in the use of these photographs was purely technical. N.T. 603–615; 811–817. Without conceding that the rulings should have been otherwise, it is at least clear to the Court that the photographs were not prejudicial to defendant and that their exclusion would not have influenced the outcome of the case.

6. Error in Admitting Evidence that Witness Tate Had Been Convicted of a Felony

The defendant's statement of this ground is as follows:

"The testimony of Tate, the only alleged eye-witness outside of the participants, was obviously crucial. He stated that he was following decedent's car on Front Street and saw the car pursue a straight and speedy course into the lighted locomotive. The court abused its discretion, we submit, in permitting plaintiff to bring out that 25 years previously, on December 20, 1939, Tate had been convicted of assault, burglary, robbery and firearms violation ([N.T.] 955). The remoteness in time of this conviction made it a neutral factor for impeachment purposes." [citing Keogh v. Republic Fuel and Burner Co., Inc., 382 Pa. 593, 116 A. 2d 671 (1955).]

This is another of the questions which was briefed and argued thoroughly during the course of trial, and regarding which the record contains reasons for the Court's ruling. N.T. 941–955, ruling at 955–956; see also 1193–1199.

▇ The witness was examined and cross-examined at some length. N.T. 1199–1342. After having again considered that testimony, the Court adheres to its ruling, and is convinced that it was no abuse of discretion, in this case, to permit the conviction to be shown. The Court's charge as to credibility, furthermore, is deemed proper in the circumstances. N.T. 2251–2252.

7. Remaining Assignments of Error

The remaining matters of which defendant complains are alleged error in sending out plaintiff's exhibit 53 and errors in the charge. Defendant's objections and the Court's ruling are in the record. N.T. 1998–2000. The prejudice resulting from permitting this 5″ x 20″ enlargement of a Reading Company list of instructions is simply not apparent to this Court. N.T. 2294.

Certain further points concern the Court's charge to the jury. The Court's rulings on requests for instructions are in the record at pages 2215 to 2244. The charge is set out at pages 2248 to 2275. Further requests, objections, and rulings thereon are to be seen at pages 2276 to 2308. These matters have been reviewed, with the result that the Court feels that if the charge contained errors —as is almost inevitably the case in long and hotly contested trials—such errors were not prejudicial to the defendant and thus the outcome would not necessarily

have been different had defendant been given the benefit of every ruling for which he contends.

For all the foregoing reasons, therefore, the Defendant's Motions for Judgment N.O.V. and for a New Trial are denied and it is so ordered.