GRAHAM *v.* STATE OF INDIANA.

[No. 569S121. Filed November 13, 1970. Rehearing denied December 30, 1970.]

*Frank E. Spencer,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *William F. Thompson,* Deputy Attorney General, for appellee.

JACKSON, J.—Appellant was charged by affidavit with the crime of Uttering a Forged Instrument, said affidavit reading in pertinent part as follows:

"(T)hat ANTHONY EDWARD GRAHAM alias MELVIN G. GILMORE on or about the 10th day of June, A.D. 1968, at and in the County of Marion in the State of Indiana, did then and there unlawfully, feloniously and knowingly utter, publish, pass, and deliver to BEN WEISS, doing business as LEE'S LIQUOR STORE, as true and genuine, a certain false, forged and counterfeit check for the payment of money, to-wit: ONE HUNDRED FORTY

[redacted]

FIVE DOLLARS ($145.00) in lawful money, said pretended check purporting to have been made and executed by one MR. REMOVAL, INC. by HOWARD F. FOLTZ in favor of MELVIN G. GILMORE which said false, forged and counterfeit check is of the following tenor, viz:

(Said check is here omitted due to the difficulty in reproducing the same)

with intent then and there and thereby feloniously, falsely and fraudulently to defraud the said BEN WEISS, doing business as LEE'S LIQUOR STORE, the said ANTHONY EDWARD GRAHAM alias MELVIN G. GILMORE then and there well knowing the said check to be false, forged and counterfeit, then and there being contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Indiana.

On August 7, 1968, appellant waived arraignment and entered a plea of not guilty to the crime as charged. Appellant waived his right to a trial by jury on October 31, 1968, and this cause was tried by the court on January 24, 1969. The court found appellant guilty as charged. On February 6, 1969, the court sentenced appellant to the Indiana State Reformatory for not less than Two (2) nor more than Fourteen (14) years.

Appellant filed his motion for new trial on February 6, 1969, said motion reading in pertinent part as follows:

"Comes now the defendant in the above entitled cause, by counsel, and respectfully prays the Court for a new trial herein on the following grounds and for the following reasons, to-wit:

1. The finding of the Court is contrary to law.

2. The finding of the Court is not sustained by sufficient evidence.

WHEREFORE, defendant Anthony Graham, by counsel, respectfully prays the Court to grant him a new trial herein.

MEMORANDUM

This case is unique in that not only was there a total lack of proof that the defendant attempted to pass, utter, publish and deliver a check for $145.00 to Ben Weiss, but there is a total absence of evidence showing that a check

was actually given to Weiss at any time under any circumstances.

A brief resume of the evidence most favorable to the State is as follows:

Ben Weiss doing business as Lee's Liquor Store testified that he saw Graham on the date in question, June 10, 1968, and that he, Weiss, knew the check was stolen and that he, Weiss, excused himself and hit a police alarm and that he waited until they came.

It is singular to note that Weiss testified he made the defendant endorse the check but the check is barren of any endorsement by the named payee on the check, Melvin Gilmore, or by the defendant or by anybody else. Police Officer Schlosser testified that he talked to Graham in the turnkey's office at the City Lockup and that Graham said the check was won in a crap game at Graham's house.

The sole question involved is, is the evidence sufficient with reference to the uttering, passing and delivering a check to Ben Weiss with the intent to defraud him and since the check was not endorsed, was never cashed, and that no consideration passed therefor, it would seem that the defendant was found guilty by speculation and conjecture which concerns the mental operations of the defendant. In the absence of any testimony indicating any overt act, suggestions or mannerism of the defendant, the only thing that the defendant did was to enter the place of business and ask Mr. Ben Weiss if the check were any good.

As a matter of fact, the evidence in this case falls far short of the minimal requirements to sustain a finding in a civil action because—

1. The record is barren of sufficient evidence that Graham did unlawfully, feloniously and willingly deliver to Weiss a check;

2. That defendant intended to defraud Ben Weiss; and

3. No consideration passed and the sole activity on the part of the defendant was entering the place, handing a check to Weiss and asking him (Weiss) if the check was any good because of the habit of Mr. Melvin Gilmore to cash checks there.

It is therefore respectfully submitted that the evidence is insufficient to sustain the conviction and it is therefore respectfully urged that the motion for new trial be granted."

The same was overruled on February 24, 1969. Appellant's sole Assignment of Error on appeal is: "1. That the Court erred in overruling appellant's Motion For New Trial."

From the evidence adduced at the trial of this cause, viewed most favorably to the State, it appears that on the afternoon of June 10, 1968, appellant entered Lee's Liquor Store, located at 811 N. Illinois Street, Indianapolis, Indiana, and approached the owner, Mr. Ben Weiss. Appellant presented a check to Weiss which the latter immediately recognized as one reportedly stolen from an Indianapolis company, Mr. Removal, Inc. The check was purportedly drawn by Howard F. Foltz as President of Mr. Removal, Inc., and was made payable to the order of one Melvin G. Gilmore for $145.00, however, the drawer's signature on the check was not that of Howard Foltz nor was it the same as the signature appearing on the signature card at the Indiana National Bank. Mr. Foltz did not execute the check.

When appellant handed the check to Weiss to be cashed, Weiss immediately turned in an alarm to the police due to his suspicion about the check. He then engaged the appellant in conversation, trying to keep him in the store until the police arrived.

When Weiss asked for some identification, appellant presented an ID card showing the name Melvin G. Gilmore, the same name appearing as the payee of the check. Approximately three minutes later the police arrived and appellant was taken away.

Appellant contends that Melvin Gilmore gave him the check in question as payment for a gambling debt the latter owed him, and that Gilmore told him to take the check to Lee's Liquor Store to verify the fact that the check was good. Appellant testified that he handed Weiss the check, asked him if it was any good, and the next thing he knew, Weiss disappeared into the back room and, shortly after he re-appeared the police came and arrested him. Appellant testified that

he did not tell Weiss his name was Gilmore and did not present any identification of any person other than himself. He denied having any knowledge that the check was forged and further stated that he was not attempting to cash the check.

Appellant's sole argument on appeal is that the evidence presented to the trial court was wholly insufficient to sustain his conviction, and that, therefore, said conviction should be reversed. More specifically, he argues that there was no evidence that he did, in fact, "utter" the check with the intent to defraud Weiss as charged in the affidavit.

The statute upon which appellant was charged and convicted is Burns Ann. Stat. § 10-2102 (1956 Repl.) ; said statute reads in pertinent part as follows:

> "Whoever falsely * * * utters or publishes as true any * * * instrument or matter, knowing the same to be false, defaced, altered, forged, counterfeited, falsely printed or photographed, with intent to defraud any person, body politic or corporate shall, on conviction, be imprisoned in the state prison not less than two (2) years nor more than fourteen (14) years, and fined not less than ten dollars ($10.00) nor more than one thousand dollars ($1000.00)."

> "Uttering" a forged instrument has been defined by this Court, in the case of *Gennaitte* v. *State* (1962), 243 Ind. 532, 188 N. E. 2d 412, as:

> "* * * the offering of a forged instrument, knowing it to be such, with a representation that it is genuine, and with an intent to defraud. It is not essential that (the) accused should have been implicated in the forgery, that the instrument be accepted as genuine, or that anyone be actually prejudiced by it * * *."

There is certainly sufficient evidence in the case at bar to show that the particular check in question was, in fact, a forged instrument. Howard Foltz, the purported drawer of the check, testified that the check was one of a number of checks that had been stolen from his company. He also stated that he did not execute this check, did not authorize

its execution and that the signature of the drawer appearing thereon was not his signature.

There was also sufficient evidence presented to the trial court to prove that appellant uttered or offered the check to Weiss. The following testimony of Ben Weiss is significant in this respect:

> "Q. And did he tell you that he came in to determine whether or not you would cash the check because you had cashed some other checks previously for Gilmore, did he tell you that?
> A. No, he just wanted to get the check cashed, that was all.
> Q. What's the first thing he said when he came in the place?
> A. If I could cash his check." (Tr. p. 55, 56)
> "A. Well he just wanted to know if I would cash the check." (Tr. p. 56)

Officer William Schlosser of the Indianapolis Police Department had occasion to talk to appellant on the night of the latter's arrest in the City Lock-Up. With respect to that conversation, Officer Schlosser testified as follows:

> "Q. Can you tell the Court what you said and what he said?
> A. I asked him where he got the check and he said he won it in a crap game at his home and *he said he used the identification besides and went to Mr. Weiss' Liquor Store and tried to get the check passed.*" (Emphasis supplied) (Tr. p. 64)

Although appellant contends that he did not present the check to Weiss and ask him to cash it, this Court has held on numerous occasions that it will not weigh the evidence or determine the credibility of the witnesses, *Croney* v. *State* (1969), 252 Ind. 319, 247 N. E. 2d 501; *Stock* v. *State* (1966), 247 Ind. 532, 219 N. E. 2d 809; and that, when the sufficiency of the evidence is raised as an issue on appeal, it will look to only that evidence most favorable to

the State, together with all logical and reasonable inferences which may be drawn therefrom. *McGill* v. *State* (1969), 252 Ind. 293, 247 N. E. 2d 514; *Fisher* v. *State* (1966), 247 Ind. 529, 219 N. E. 2d 818.

Further, there was evidence to prove that appellant did so utter the instrument with the intent to defraud Weiss, and that, at the time he presented the check to Weiss, he knew the check was a forgery. At the time of his arrest appellant had in his possession certain identification cards bearing the name, Melvin Gilmore, the name of the payee of the check. Ben Weiss testified that the appellant presented said identification to him at the time he attempted to cash the check, and thereby represented to him that he was one and the same person as Melvin Gilmore. Weiss' testimony is as follows:

"Q. * * * Isn't it a fact that he told you his name was Graham?
A. Gilmore.
Q. He said Gilmore?
A. Yes.
Q. Are you sure now?
A. That's what his ID showed, Gilmore.
Q. Gilmore, he showed you that?
A. Yes." (Tr. p. 55).

We feel this evidence, plus the testimony of Weiss and Schlosser above referred to, was sufficient to enable the trier of fact to conclude that the appellant was guilty of the crime charged beyond a reasonable doubt.

Without attempting to unduly belabor this opinion, and purely by way of dicta, we wish to call attention to a fact that should be given attention by the legislature. The penalty provided for by the statute invoked in the case at bar (Acts 1905, ch. 169, § 676, p. 584, being Burns Ann. Stat. § 10-2102) reads as follows:

"* * * shall, on conviction, be imprisoned in the state prison not less than two (2) years nor more than fourteen

(14) years, and fined not less than ten dollars ($10.00) nor more than one thousand dollars ($1000.00)."

At the last account, the end of the 1969-70 fiscal year, it cost the State of Indiana approximately six dollars and six cents per day to maintain an inmate in the state prison. Assuming an inmate sentenced under the above statute serves the minimum sentence of two years, with no time off for good behavior, he has cost the taxpayers of this state directly the sum of $4,423.80; this at a time when our penal institutions are over-crowded, under-staffed, inadequately equipped, and utterly failing their assigned role of rehabilitating the inmate. In addition to the direct cost, if the inmate be a married man with a family, the day the prison doors open to admit him the doors to the welfare office in the county of his residence must of necessity open to his wife as a welfare recipient in order that she may be sure her family is housed, fed, and clothed until her husband's return.

The penalty provided for by this statute is *not* for a crime of violence yet we note that said penalty is greater than the penalty imposed upon a conviction on a charge of Assault and Battery With Intent to Commit a Felony (one to ten years, Burns Ann. Stat. § 10-401), and is equal to the penalty imposed upon a conviction for Assault or Assault and Battery With Intent to Kill (Burns' § 10-401(a), 1969 Supp.).

It thus appears that Burns Ann. Stat. § 10-2102, *supra,* provides for a penalty which is greatly disproportionate to the seriousness of the crime upon which it is based. It would seem that the punishment provided by said statute is violative of both Article 1, Section 16 of the Constitution of the State of Indiana, said Article and Section reading as follows:

"§ 16.   Excessive bail, punishment, and penalties.—Excessive bail shall not be required. Excessive fines shall not be imposed. Cruel and unusual punishment shall not be inflicted. All penalties shall be proportioned to the nature of the offense."

and the Eight Amendment to the United States Constitution, which reads as follows:

> "Bail—Punishment.—Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

It has been stated that "basic to American jurisprudence is the concept that the punishment should fit the crime." (1) See, also, Saturday Review, September 19, 1970 issue, "Criminal Justice in Time of Turbulence," p. 21 *et seq.* It seems clear that by no stretch of the imagination can it be said, in the case at bar, that the punishment for the crime of which appellant was convicted is proportionate to its seriousness in view of the penalties imposed for convictions of the crimes of violence above referred to.

On the basis of stare decisis, the judgment of the trial court is affirmed.

Hunter, C.J., Arterburn and Givan, JJ., concur in result. DeBruler, J., concurs.

NOTE.—Reported in 263 N. E. 2d 521.