RICHARD M. ORR, ADMINISTRATOR OF THE ESTATES OF WILLIAM D. WILCHER AND JOHN W. ALEXANDER v. ECONO-CAR OF INDIANAPOLIS, INC.

[No. 370A46. Filed December 27, 1971.]

*Gary D. Beerbower, Douglas D. Church, Roberts & Church,* of Noblesville, for appellants.

*Evan Steger, Ice, Miller, Donadio & Ryan,* of Indianapolis, for appellee.

SHARP, J.—This case was initiated as two separate actions for wrongful death brought by the personal representative of the Estates of William D. Wilcher and John W. Alexander, respectively. Both cases were originally filed in Marion County, Indiana and later venued to Hamilton County, Indiana. Both cases were consolidated for trial and have been consolidated for purposes of this appeal. In each case, the amended complaint was in three legal paragraphs based respectively on negligence, implied warranty and strict liability and were submitted to the jury on each. The cases

were tried for a period of nine days in which 15 witnesses were heard. The record discloses approximately 1250 pages of transcribed testimony. The jury returned a verdict on behalf of the Appellee and against the Appellants in both cases.

The Appellants have asserted here alleged errors of law which occurred during the trial of the case in regard to the admission over objection into the evidence of the results of tests performed by the Indiana State Police Laboratory as to the amount of alcohol present in the blood specimens taken from the decedents. We are here primarily concerned with a relatively small part of the total evidence introduced which covers approximately 79 pages of the total record of proceedings.

In general, the decedents, Wilcher and Alexander, were fatally injured while occupying and operating an automobile rented from the Appellee when a tire blew out on May 6, 1965, on Indiana Highway No. 37, approximately 10-12 miles south of Bloomington, Indiana. The decedents' south-bound vehicle ascended a grade with a slight curve to the east or left, and as it reached the section of the level highway before going down a hill to the south, the decedents' vehicle went out of control and left the pavement to the right and returned to the pavement and crossed the center line where it collided head-on with another vehicle. There was evidence of speed from 75 to 85 miles per hour just before the incident occurred. There was testimony from one eyewitness that he heard a whistling sound and a pop just before the decedents' vehicle went out of control. The decedents were the only occupants of the vehicle at the time of the collision and both of them were apparently killed instantly. The matters of which the Appellants complain and assert error in this court concern the admission of the results of tests which were performed to determine the alcoholic content of the blood of both decedents at the time of their death. This evidence was introduced on behalf of the Defendant-Appellee through the

deposition of testimony of Dr. Anthony Pizzo and Officer Wayne Lockhart of the Indiana State Police. Dr. Pizzo was a physician who specialized in the field of pathology and testified that in May of 1965, he was coroner of Monroe County, Indiana. As such, he was called to the scene of the accident in which the decedents were involved by the Sheriff of Monroe County. He testified that he arrived at the scene of the accident, examined the bodies of both decedents and pronounced them dead at the scene. He further testified that he personally identified the bodies of each decedent from identification papers on their person and also made notes as to their physical descriptions. Dr. Pizzo then testified that the bodies were removed to a mortuary in Bloomington, Indiana and that he personally proceeded to the mortuary for further examination of the bodies to determine, among other things, the cause of death and to draw a specimen of blood to be tested for alcoholic content. With reference to the decedent, Wilcher, Dr. Pizzo testified that at approximately 9:45 o'clock p.m. on the date of the accident he withdrew the required amount of blood from the body of such decedent. He then placed the blood specimen in a container or vial and then placed this container in an envelope on which the decedent's name, as well as other information, had been inscribed under his supervision and direction. This sealed envelope containing the blood specimen of the decedent, Wilcher, was then placed in a mailing container and mailed to the Indiana State Police Laboratory in Indianapolis, Indiana. Dr. Pizzo identified what had been marked as an exhibit as the envelope in which he placed the specimen taken from the decedent, Wilcher, which envelope had been sealed and transmitted to the Indiana State Police Laboratory. A photocopy of exhibit was introduced into evidence at the trial.

Dr. Pizzo also testified that the same procedure was followed with reference to the specimen of blood drawn from the body of the decedent, Alexander. Likewise, an exhibit was introduced into evidence, identified as a copy of the envelope in

which he placed the specimen of blood taken from the body of the decedent, Alexander, sealed the same and placed the same in a mailing container and sent it to the Indiana State Police Laboratory. On cross-examination, Dr. Pizzo testified that he did not specifically recall whether he mailed the packages or whether he handed them to another State Police officer, Officer Cooper, who was present in the room at the time, to be mailed. He did testify that the exhibit showing the identification of the blood samples were filled out in his presence at the mortuary and at his request and direction.

The deposition of Officer Wayne Lockhart was also read into evidence, it having been established that he would be out of state at the time of the trial. Officer Lockhart testified that in May of 1965, he had been an officer with the Indiana State Police for 20 years and was assigned to the Indiana State Police Laboratory in Indianapolis. His duty included the analysis of blood samples for the presence of alcohol and prior to May, 1965, he had analyzed over 800 such specimens. During his testimony, Mr. Lockhart was handed the two exhibits above referred to which purported to be copies of the envelopes in which Dr. Pizzo testified he placed the blood specimens taken from the decedents. Officer Lockhart testified that these exhibits were a photocopy and were a true and accurate representation of the envelopes which he received by United States Mail in the Indiana State Police Laboratory at Indianapolis, Indiana on May 10, 1965. The evidence discloses that these samples were mailed in Bloomington, Indiana, late in the day on Thursday, May 6, 1965, and Officer Lockhart testified that he received the same in his mail in Indianapolis on Monday, May 10, 1965. He further testified that the envelopes in question came in a mailing tube and were sealed upon receipt in the laboratory. He testified that inside the sealed envelope was a glass bottle containing blood. In each case, he testified that the blood samples were identified by inscription showing the name and other identifying information of each decedent. Officer Lockhart testified that he

performed a chemical analysis on the specimens of blood from the two envelopes. After describing the method by which the chemical analysis was done, Officer Lockhart testified that the blood specimen of the decedent Wilcher contained .14% alcohol by weight and the blood specimen of the decedent Alexander contained .28% alcohol by weight. He further testified that the method for performing the chemical analysis used in these instances constituted the ordinary practice used by the Indiana State Police Laboratory.

On this subject, the trial court gave to the jury, two instructions. The first was:

> "Evidence has been introduced in this cause as to the results of the chemical analysis as to the amount of alcohol in the blood of both decedents. You are instructed that at all times relevant, there was in full force and effect a statute in the State of Indiana concerning the amount of alcohol in a person's blood sufficient to affect his driving ability, which said statute, in its relevant portions is as follows:
>
>> 'Evidence that there was, at that time five hundredths per cent (.05%) or less, by weight of alcohol in his blood, is prima facie evidence that the defendant was not under the influence of intoxicating liquor sufficiently to lessen his driving ability within the meaning of the statutory definitions of the offenses. Evidence that there was, at the time, from five hundredths per cent (.05%) to fifteen hundredths per cent (.15%) by weight of alcohol in his blood is relevant but it is not to be given prima facie effect in indicating whether or not the defendant was under the influence of intoxicating liquor within the meaning of this act. Evidence that there was, at the time, fifteen hundredths per cent (.15%) or more, by weight of alcohol in his blood, is prima facie evidence that the defendant was under the influence of intoxicating liquor sufficient to lessen his driving ability.' "

The second instruction stated:

> "You have been previously instructed relative to the chemical analysis as to the amount of alcohol in the blood of both decedents. This particular instruction is applicable only to the driver of the motor vehicle and you should apply

it only to the person that you find was the actual driver of the subject motor vehicle. This instruction has no relevancy to the passenger of the motor vehicle as given."

The court also instructed the jury that contributory negligence was not a defense to an action based upon strict liability and that any negligence of the driver could not be imputed to the passenger.

The Appellants' first contention is that it was error to admit evidence as to the intoxication of the decedent Wilcher because he was the passenger rather than the driver of the vehicle in which the decedents were riding at the time of the accident in question. In the third amended complaint for wrongful death filed separately by the personal representative of both decedents, it was explicitly alleged that the 1964 Dodge Dart in question was being operated by the decedent Wilcher at the time of the incident on May 6, 1965. During the submission of the Appellants' case in chief, counsel for the Appellants read into evidence a number of requests for admission which had been filed by the Appellants and responded to by the Appellee. Request for admission twenty-two stated:

"That on or about May 4, 1965, William D. Wilcher was operating said motor vehicle in a southerly direction on State Road 37, approximately 55 feet north of said Road Intersection on Cedarbluff Road."

The response of the Appellees was also read to the jury as follows:

"Defendant admits the matters stated therein, in-so-far as they relate to the deaths of William D. Wilcher and John W. Alexander on State Road 37, approximately 55 feet north of the Intersection of Cedarbluff Road, but to the extent that the reference in this request, to request Number Twenty Two would admit that William D. Wilcher was the Operator of the motor vehicle, and said request is denied."

There was eyewitness testimony from the first person who arrived at the scene that the smaller of the two men was on

the right side of the car and the larger on his left. There was testimony that the decedent, Alexander, was larger than the decedent, Wilcher. Such evidence may have proved or disproved the allegations of the complaint that the decedent Wilcher was the driver, but the identity of the driver clearly remained an issue of fact throughout the trial and was, in fact, an issue raised by the pleadings of the Appellants themselves. The fact that at the close of the Appellants case in chief, they made a general motion to amend the pleadings to conform with the proof does not of itself remove from the consideration of the trier of fact the issue as to the identification of the driver of the vehicle in this case.

In addition, the issue of the consumption of alcohol and the possible intoxicated condition of the decedents was first raised in the evidence by the Appellants themselves. On the direct examination of witness Withrow by Appellants' counsel there were the following questions and answers:

Q. When you pulled these bodies from the car, how close were you to them?
A. Right agin' 'em.
Q. Did you detect any odor of alcohol on either one of these bodies.
A. No, I didn't.
Q. You handled these bodies in your hands?
A. The little fellow, I almost hugged him, as I pulled him out.
Q. There was no trace of an odor of alcohol, in your opinion, from either one of these bodies?
A. No. none that I can recall.

The Appellants opened the door to the subject of the consumption of alcohol and the condition of intoxication of the decedents. In *Reserve Life Insurance Co.* v. *Luedke, et al.,* 132 Ind. App. 476,488, 177 N. E. 2d 482 (1961), Judge Myers speaking for this Court said:

"When plaintiff was presenting her case in chief, the subject of her conversation with the agent concerning her eligibility to take out the policy was presented to the court and ruled out by objection upon the part of appellant. This objection was sustained as being anticipatory of a defense. In presenting its case, appellant introduced the X-rays of plaintiff which had been taken throughout the years, including those prior to the issuance of the policy. Plaintiff had the right on rebuttal to give her version and explanation of the X-rays and to show that she believed she was in good health at the time. Where evidence on a certain issue is introduced by one party, and it appears likely that the other party will be prejudiced unless he is permitted to introduce contradictory or explanatory evidence, such evidence should be admitted. *Lyon* v. *Aetna Life Insurance Company* (1943), 112 Ind. App. 573, 44 N. E. 2d 186; 12 West's Indiana Law Encyclopedia, Evidence, ch. 3 § 54, p. 486. This was proper rebuttal evidence and there was no error in admitting it. See also *Fahler* v. *Freeman,* 143 Ind. App. 493, 241 N. E. 2d 394 (1968).

The next contention of the Appellants is that the alcoholic content of neither decedents' blood is admissible in the absence of other independent evidence that the decedents either consumed alcohol or acted in an intoxicated condition.

At the trial court, the Appellants relied almost exclusively for their argument in this regard on the case of *Parker* v. *Reading Company,* 244 F. Supp. 494, (E.D. Pa. 1965). The above decision of the United States District Court in *Parker* v. *Reading Company* was reversed upon appeal in *Parker* v. *Reading Company,* 363 F. 2d 608 (3rd Cir. 1966). In commenting on the contention made here by the Appellants, the United States Court of Appeals for the Third Circuit said in its opinion:

"Since the evidence establishes the decedent's contributory negligence as a matter of law, judgment must be entered for the railroad. Thus, it is unnecessary to decide whether the trial court erred on excluding post mortem evidence of the alcoholic content of the decedent's blood as evidence of intoxication. However, we do observe that the district court

seems to have been persuaded that under Pennsylvania law eyewitness testimony of conduct and condition at the time in question is the only way in which intoxication may be proved in a civil case. We have examined the cases but have not been able to discover or infer such a rule. *The decision below should not be relied upon* as authority for any so comprehensive a limitation on the method of proving intoxication. 363 F. 2d 608, 610.

A careful consideration of the opinion of the United States District Court in *Parker* v. *Reading Company, supra,* and of the United States Court of Appeals' reversal does not lead us to the conclusion in this case that the trial court committed reversible error in the admission of the results of the blood tests here in question. The Appellants have cited to us no other authority on this point.

The Appellants next contend that the results of the analysis of the blood specimens of the decedents were erroneously admitted into evidence without having first established a proper foundation or "chain of identification" of the specimens that were analysed. The Appellants complain that there was no evidence as to the whereabouts of the blood specimens for a period of four days from the time the blood was taken on Thursday, May 6, 1965, until it was received in the Indiana State Police Laboratory on Monday, May 10, 1965. In regard to the identity and chain of events with reference to the blood specimens in question, the evidence may be summarized as follows:

1. Dr. Anthony Pizzo, a pathologist and coroner of Monroe County, Indiana, went to the scene of the accident where he examined the bodies of the decedents William D. Wilcher and John W. Alexander, and pronounced them dead at the scene.

2. The bodies were removed to a mortuary in Bloomington, Indiana, where Dr. Pizzo, identified the decedents from papers on their persons, and noting their respective physical characteristics, proceeded to obtain blood specimens.

3. Dr. Pizzo withdrew a specimen of blood from the body

of William D. Wilcher using a disposable syringe and needle which were taken from a sterilized package.

4. Dr. Pizzo then placed the blood specimen in a bottle or vial and then placed the bottle in an envelope onto which William D. Wilcher's name had been inscribed along with other information. A photocopy of the front of the envelope was introduced as Defendant's Exhibit H.

5. The envelope was sealed and placed in a mailing container and sent to the Indiana State Police Laboratory in Indianapolis, Indiana. On cross-examination, Dr. Pizzo admitted that he was unsure whether he or the Indiana State Police officer who was with him at the time the specimen was taken actually deposited the mailing tube in the mail.

6. The same procedure was followed with respect to John W. Alexander. The specimen taken from his body was placed in the envelope, a photocopy of which was introduced as Defendant's Exhibit G, sealed and sent to the laboratory in Indianapolis.

7. This was all done at approximately 9:30 p.m. on the night of May 6, 1965.

8. The night of May 6, 1965, was a Thursday night.

9. The envelopes containing the blood specimens of the respective decedents were received in the United States mail by Officer Wayne Lockhart on Monday, May 10, 1965. The envelopes, were received in mailing containers and were sealed. Inside the sealed envelopes were glass vials containing the blood specimens.

10. Officer Wayne Lockhart thereafter performed a chemical analysis on each specimen to determine the content of alcohol by weight or volume therein.

The short answer to the Appellants' argument with reference to the four day period is that the evidence shows that the specimens in question during that time were in the possession of the United States Mail. There is evidence of mailing the same in the United States Mail in Bloomington, Indiana and receiving the same in the United States Mail in Indianapolis, Indiana, and there is sufficient evidence to identify the specimens mailed in Bloomington as being one in the same as the specimens received in Indian-

apolis, Indiana at the State Police Laboratory. We believe that the evidence on this question is sufficient to show a continuous chain of identification. We do not believe that it is necessary in a civil case to show precisely every hand through which the exhibit may have passed. For example, we do not believe that the law imposes the obligation on the Appellee in this case to show and identify each mail handler who had possession of these specimens. The Appellants rely primarily on the decision of our Supreme Court in *Graham* v. *State*, 255 Ind. 237, 255 N. E. 2d 652 (1970), which is a criminal case involving narcotics. The Court was confronted with the question of improper foundation due to a break in the chain of identification. Judge Hunter, speaking for the Court, said:

> "The chain of evidence method of identification is a widely recognized concept in both criminal and civil law. In most cases it is not possible to establish the identity of an exhibit in question by a single witness. The exhibit has usually passed through several hands before being analyzed or examined or before being produced in Court. Certainly this is the case here. The record indicates that, from the time of the alleged "buy" until the trial, the exhibit was handled by at least eight different property clerks who either received or released it from the police property room. In addition it was handled by at least three police officers at different times during the same period.
>
> "Under such circumstances as these it is necessary to establish a complete chain of evidence tracing the possession of the exact and original exhibit to the final custodian. If one link of the chain is entirely missing, the exhibit cannot be introduced or made the basis for the testimony or the report of an expert or officer. If the testimony of the state's expert witnesses as to the narcotic content of the white powder is sought to be offered at trial, then the state would be prepared to establish a 'chain of evidence' by either producing police custody records showing the same or by testimony of witnesses. This is not a new rule in Indiana but rather a shorthand recognition of the well-established evidentiary requirement that a foundation must be laid connecting the evidence with the defendant before it is admissible at the trial." 225 N. E. 2d 652, 654. (citations omitted)

The Appellee directs our attention to three subsequent cases by our Supreme Court in which the application of the rule stated in *Graham, supra,* is involved. In *Guthrie* v. *State,* 254 Ind. 356, 260 N. E. 2d 579 (1970), our Supreme Court stated:

> "Appellee has cited several cases the holdings of which indicate that all possibility of tampering need not be excluded; upon reasonable assurance that the exhibit ■ has passed through the various hands in an undisturbed condition its admission is proper and any remaining *doubts go to its weight only.* [citations omitted] . . . *We believe that such a rule is well grounded in logic and reason.* (emphasis added) 260 N. E. 2d 584.

Also, in *Wheeler* v. *State,* 255 Ind. 395, 264 N. E. 2d 600 (1970), the Supreme Court reiterated the above statement quoted from the *Guthrie* case. Most recently in *Johnson* ■ v. *State,* 255 Ind. 589, 266 N. E. 2d 57 (1971), the Supreme Court reiterated again the above quoted passage from *Guthrie, supra.* Even in criminal prosecutions in the State of Indiana where proof is required beyond a reasonable doubt, three successive Indiana Supreme Court decisions have rejected the interpretation of *Graham* v. *State, supra,* which the Appellants would urge upon this court. In criminal prosecutions in the State of Indiana, it is not necessary to account for the specimens to be analyzed through every minute or through every hand through which it may have passed, but such evidence must be produced from which the Court can reasonably be satisfied that the specimen has not been tampered with prior to analysis. Without giving any allowances for the differing burdens which exist in criminal and civil cases, we believe that there has been substantial compliance with the requirements set out in *Graham, supra,* in this case. Without restating the record here, the evidence is far more specific on the chain of identification than it was in *Graham.* All of this assumes that *Graham* applies with full vigor in a

civil case, a question which we need not, and do not, decide here.

Although we do not deem it necessary to go beyond our own jurisdiction for authority on this question, the Appellee has cited several cases which substantiate our result here. See *Wooley* v. *Hafner's Wagonwheel, Inc.*, 22 Ill. 2d 413, 176 N. E. 2d 757 (1961), *Schacht* v. *State*, 154 Neb. 858, 50 N. W. 2d 78 (1951), *Interstate Life & Accident Insurance Co.* v. *Whitlock*, 112 Ga. App. 212, 144 S. E. 2d 532 (1965), *State* v. *Fornier*, 103 N. H. 152, 167 A. 2d 56 (1961) and *Wagner* v. *Osborn*, 37 Cal. Rptr. 27 (1964).

Finally, the Appellants complain of the admission of photocopies of certain envelopes which were introduced into evidence. Both of the exhibits in question were introduced into evidence in connection with the testimony of Dr. Anthony Pizzo, which testimony was received in evidence by the reading of his deposition which had been taken on April 8, 1969, in Bloomington, Indiana. One exhibit was identified as the envelope in which the blood specimen from the body of the decedent Wilcher was placed and which was sealed and placed in a mailing container and sent to the Indiana State Police Laboratory. The other exhibit was an identical envelope with identical disposition for the decedent Alexander. At the time the deposition of Dr. Pizzo was taken, the original envelopes were identified and marked. At the request of the Indiana State Police in order to maintain the integrity of their records, it was requested that copies be substituted for the originals. An attorney for the Appellants was present at the taking of the deposition and had an opportunity to examine the original envelopes. There is no suggestion here that the photocopies are not true and accurate representations of the original envelopes or that there is any variance between the photocopies and the original envelopes. These exhibits were apparently admitted for the purpose of establishing that the envelope in which Dr. Pizzo placed and sealed the blood specimens of the decedents were the same envelopes received,

still sealed, by Officer Wayne Lockhart in the Indiana State Police laboratory. Acts 1949, ch. 168 as found in Ind. Ann. Stat. § 2-1656—1658 (Burns 1968), I.C. 1971, 34-3-15-1—34-3-15-3 provides:

SECTION 1. That any business may cause any or all records kept by such business to be recorded, copied or reproduced by any photographic, photostatic or miniature photographic process which correctly, accurately and permanently copies, reproduces or forms a medium for copying or reproducing the original record on a film or other durable material, and such business may thereafter dispose of the original record.

SECTION 2. Any such photographic, photostatic or miniature photographic copy or reproduction shall be deemed to be an original record for all purposes and shall be treated as an original record in all courts of administrative agencies for the purpose of its admissibility in evidence. A facsimile, exemplification or certified copy of any such photographic copy or reproduction shall, for all purposes, be deemed a facsimile, exemplification or certified copy of the original record.

SECTION 3. For purposes of this Act "business" shall mean and include each business, bank, industry profession, occupation and calling of every kind.

Although not directly on point here, the comment of Judge DeBruler, speaking for our Supreme Court in *Wells* v. *State,* 254 Ind. 608, 261 N. E. 2d 865, 870 (1970), is enlightening:

"The modern trend has been to clarify and simplify the rule by adopting one or another of the model rules, e.g. Uniform Rule of Evidence, Rule 62(13); Proposed Rules of Evidence for U.S. District Courts, Rule 8-03(b) (6); Model Code of Evidence Rule 514(1). Indiana has not yet adopted such a rule, however, there has been some modification of the common law requirements. Note, The Need for a Liberal Business Entry Statute in Indiana, 31 Ind. L. J. 312. The first requirement has been modified in Indiana by Acts 1949, ch. 168, §§ 1 and 2, Burns Ind. Stat. Ann. §§ 2-1656 and 2-1657, which provide for the admission of duplicate copies of the original records. The fourth requirement is satisfied in Indiana even if the witness is present and merely cannot recall the facts so as to testify

from memory. *Culver* v. *Marks* (1889), 122 Ind. 554, 23 N. E. 2d 1086. The definition of 'business' has been broadened to include every business bank, industry, profession, occupation and calling of every kind. Acts 1949, ch. 168, § 3, Burns' Ind. Stat. Ann. § 2-1658. The history of the Indiana rule and the cases up to that time are well discussed in Note, 31 Ind. L. J. 312, *supra."*

It is also clear that part of the legislative intent in Acts 1949, ch. 168 was to bring modern requirements of proof more in line with modern methods of photographic reproduction in the business world. Under all the circumstances presented here, we can see no prejudicial error with reference to the admission of the copies of the envelopes in question.

As indicated, it appears from the record that the issues raised in this appeal pertain to only a small part of the total mass of evidence, and were, at best, a side issue to the whole case. Each case was submitted to the jury on separate theories of negligence, implied warranty and strict liability. The jury found for the Appellee on all three theories in each case. In as much as the quantum of proof necessary for the Appellants to have succeeded on the basis of strict liability is less than on the others, it may well be that the admission of the blood tests had nothing to do with the verdict of the jury.

The Appellants have been unable to persuade us that any alleged error in this complex and protracted trial was reversible error. We believe that substantial justice was done here.

The judgment should be and hereby is affirmed.

Hoffman, C.J., Staton and White. JJ., concur.

NOTE.—Reported in 276 N. E. 2d 524.