**Kimberly A. FENDLEY, Appellant (Plaintiff Below),**

v.

**Gregory A. FORD, Appellee (Defendant Below).**

**No. 2–782A218.**

Court of Appeals of Indiana, Second District.

Jan. 25, 1984.

Vernon J. Petri, Thomas C. Doehrman, Indianapolis, for appellant.

Richard H. Crokin, Indianapolis, for appellee.

SHIELDS, Judge.

Kimberly A. Fendley (Fendley) appeals the judgment against her and in favor of the defendant, Gregory A. Ford, (Ford), raising the following issues:

1. Whether the trial court erred in refusing, upon Ford's objection, to admit those portions of Ford's hospital records containing the result of a test showing the level of alcohol present in his blood taken in a hospital emergency room immediately following the accident; and,

2. Whether the court erred in not permitting Fendley's witness to testify, based on the results of the blood alcohol test, as to his opinion of Ford's condition and ability to operate a motor vehicle on the morning of the accident.[1]

We affirm.

Fendley, a passenger in her parents' automobile driven by Gregory Francescon (Francescon), was injured in a collision between that automobile and an automobile driven by Ford at the intersection of U.S.

---

1. Fendley's issues have been consolidated to avoid repetition.

Highway 421 and Interstate 465. Ford was taken to the Wishard hospital emergency room by ambulance where the treating physician ordered a blood alcohol test prior to rendering him treatment for his lacerations.

## I.

As her first issue, Fendley contends the trial court erred in not admitting, under the business records exception to the hearsay rule, the result of the blood alcohol test of Ford's blood recorded in the hospital records. Ford contends the trial court's exclusion was proper, regardless of its presence within the hospital records, because it represented the expert opinion, based on a scientific or diagnostic test, of an out-of-court declarant or declarants Ford was unable to cross examine.

■ The trial judge gave two reasons for his refusal to admit the portion of Ford's hospital record that contained the result of the blood alcohol test: 1) Fendley failed to establish the required chain of custody of the blood sample from withdrawal to testing, and 2) Fendley failed to establish a proper foundation for admission of the test result. On appeal, Ford denies his objections at trial were directed to the chain of custody of the blood sample and contends his objections were "constantly" directed to the lack of foundation for the test result. However, the statements in Ford's brief are not supported by the record which reveals his objections concerned both the chain of custody of the blood sample and the foundation for the opinion. In any event, the decision to admit or exclude evidence is made at the trial court's discretion. Regardless of the objection registered at trial, if the trial court's exclusion of the evidence is supportable, we cannot say the trial court abused its discretion. *State v. Edgman*, (1983) Ind.App., 447 N.E.2d 1091, 1103; *American United Life Insurance Co. v. Peffley*, (1973) 158 Ind. App. 29, 301 N.E.2d 651, 655, *rehearing denied*, (1974) 158 Ind.App. 29, 306 N.E.2d 131.

■ Based on the recent supreme court decision, *Baker v. State*, (1983) Ind., 449 N.E.2d 1085, the trial court correctly excluded the blood alcohol test result recorded in the medical records because Fendley failed to establish a sufficient chain of custody for the blood sample. In *Baker* the State sought to introduce as an exhibit the hospital record of the examination and laboratory reports of the victim that indicated the presence of sperm in the victim's vagina. The defendant objected because an adequate foundation had not been established for the hearsay opinion and because the State failed to prove a proper chain of custody. In holding the trial court erred in admitting the exhibit the supreme court said:

"It was incumbent upon the State to present evidence of the doctor or someone in authority present at the taking of the specimens from L.C. *and* to further demonstrate a *chain of custody* of the specimens to the laboratory where the testing was made and the conclusions drawn." (emphasis added) 449 N.E.2d at 1087.

■ The purpose of requiring an adequate chain of custody is to connect the evidence with the proper individual and to negate any substantial likelihood of tampering, loss, *substitution or mistake*. *Arnold v. State*, (1982) Ind., 436 N.E.2d 288. Accordingly, the specificity and completeness of the evidentiary foundation diminishes as the nature of the proposed exhibit becomes decreasingly susceptible to alteration, tampering or substitution. *Pollard v. State*, (1979) 270 Ind. 599, 388 N.E.2d 496. A blood sample, like a drug sample or a semen sample, is more fungible than a gun and consequently the chain of custody foundation is more stringent. Nevertheless, it is not necessary to account for every minute or every hand through which the sample passes. What is required is the production of evidence from which the trial court can reasonably conclude the specimen passed through time and the various hands in a relatively undisturbed fashion to the point it is subjected to analysis. *Orr v.*

*Econo-Car of Indianapolis, Inc.,* (1971) 150 Ind.App. 411, 276 N.E.2d 524.

*Orr* involved the issue of the adequacy of the chain of custody of blood samples. This court found the foundation was adequately laid by the testimony of two witnesses. The pathologist, who examined the decedents and obtained blood specimens, testified he obtained the specimens, placed the blood in vials, and placed the vials in sealed envelopes upon which the respective decedents' names and other pertinent information were inscribed. The sealed envelopes were then placed in mailing containers and deposited in the United States Mail addressed to the Indiana State Police Laboratory. Next, the Indiana State Police laboratory technician who analyzed the samples testified as to his receipt, through the United States mail, of the mailing containers in which he found sealed envelopes containing glass vials of blood identified by the name and other information of each decedent. He further testified these were the samples he analyzed. This evidence sufficiently identified the specimens initially drawn as one and the same as the specimens received and tested by the Indiana State Police.

Similarly, in *Arnold v. State,* (1982) Ind., 436 N.E.2d 288, the court determined sufficient evidence existed to establish the chain of custody involving a "rape kit." The examining emergency room physician testified the kit offered by the State at trial was the same kit assembled as a result of his examination of the victim. A serologist then testified she had subjected the contents of *the* kit offered in evidence at trial to testing. Thus, again, the identicalness of a body specimen from the time of its taking to its delivery to a laboratory for analysis was shown.

So, too, in this case the chain of custody rule minimally requires evidence from which the trial court could reasonably conclude the blood drawn from Ford was the blood subsequently analyzed.

Fendley presented testimony of the physician who ordered the blood test and was present when the specimen was drawn.[2] However, Fendley failed to offer any evidence as to the means by which the blood specimen was sent to and received by the laboratory in which it was analyzed. The administrative technologist of the Department of Pathology at the hospital merely testified the laboratory performed blood alcohol tests and recorded the results in the patient's hospital records. Without testimony as to the arrival of the blood sample in the laboratory, there is no evidence from which the trial court could reasonably conclude it was Ford's blood.

The testimony offered by Fendley was not sufficient to establish a chain of custody. It was not error, therefore, for the trial court to exclude from evidence the result of the alcohol test performed on Ford.[3]

2. The doctor could not recall whether she or one of the nurses drew the sample; we do not find this fatal to the chain of custody issue because the doctor was nonetheless able to ensure the blood specimen was Ford's.

3. Because of the inadequacy of the chain of custody we do not address other issues inherent in the offer of the hospital record as evidence of Ford's blood alcohol content. Such issues include, but are not limited to, the hearsay issue as well as the adequacy and necessity of a foundation for an expert opinion. However, we observe Indiana embraces the business records exception to the hearsay rule by common law. Documentary evidence has been held to be admissible if it is:

"identified by its entrant or one under whose supervision it is kept and shown to be an original or first permanent entry, made in the routine course of business, at or near the time of the recorded transaction, by one having both a duty to so record and personal knowledge of the transaction represented by the entry." *American United Life Ins. Co. v. Peffley,* (1973) 158 Ind.App. 29, 36–37, 301 N.E.2d 651, 656, *rehearing denied,* (1974) 158 Ind. App. 29, 306 N.E.2d 131.

Later cases have modified the rule holding the "sponsor" through whom the exhibit is offered is not required to have personal knowledge of the transaction reported, but must show the entry is part of the records kept in the routine course of business and was placed in the record by one authorized to do so who had personal knowledge of the transaction at the time of the entry. *Jones v. State,* (1977) 267 Ind. 205, 369 N.E.2d 418, 421, *overruled on other grounds;* (1978) 269 Ind. 532, 382 N.E.2d 893; *Piwowar v.*

*Washington Lumber & Coal Co.,* (1980) Ind. App., 405 N.E.2d 576, 581.

Hospital records are admissible in Indiana under the business records exception as described above. *See State v. Estate of Stephens,* (1981) Ind.App., 426 N.E.2d 116 (records showing cost of care). *See* also I.C. 34–3–15.5–1 to –4 (Burns Code Ed., Supp.1982). However, the general admissibility of hospital records under the business records exception must not be taken to mean every item within the record is automatically admissible. In particular, there are two factors which may affect the admissibility of entries in hospital or medical records: 1) whether the entry is medically germane to the treatment, and 2) whether the entry is one of fact or opinion.

In order to fall within the business records exception, the recorded information sought to be admitted through the hospital record must be information kept in the ordinary course of business of the hospital. Although we find no Indiana cases on point and Indiana's hospital records statute does not specifically govern this point, there is arguable merit to the reasoning of cases from other jurisdictions which require a medical entry (as opposed to a bookkeeping entry) to be germane to the treatment, medical history, or diagnosis of the patient to be made in the ordinary course of business. *See Wadena v. Bush,* (1975), 305 Minn. 134, 232 N.W.2d 753 (evidence not conclusive so trial court did not abuse discretion in determining blood alcohol reading not medically relevant).

The second factor which must be considered in determining whether a particular entry in a hospital record is admissible under the business records exception is whether the entry represents a fact observed or an opinion. Expressions of opinion within medical or hospital records historically have not been admissible under the business records exception because their accuracy cannot be evaluated without the safeguard of cross-examination of the person offering the opinion. The expertise of the opinion giver must be established. *See 4 J. Weinstein, Weinstein's Evidence* 803(6) [06] (1981) (Federal Rule of Evidence 803(6)).

Some jurisdictions have resolved the opinion versus fact issue where blood alcohol tests and similar simple and routinely performed diagnostic tests are involved by labeling the test result "fact" rather than opinion. *See Commonwealth v. Seville,* (1979) 266 Pa.Super. 587, 405 A.2d 1262 (blood alcohol test); *Commonwealth v. Campbell,* (1976) 244 Pa.Super. 505, 368 A.2d 1299 (finding of spermatozoa in prosecutrix' vagina).

Other jurisdictions simply hold the business records exception includes the result in medical records of blood alcohol and other simple tests performed in the ordinary course of a hospital's business. The rationale most often proffered is that because of the simplicity of the performance and interpretation of the tests and their routine performance in hospitals and other medical facilities where they are customarily relied upon by treating physicians, the reliability of the test results are presumed when they are properly recorded in a patient's medical record. *See Thomas v. Hogan* (4th Cir.1962) 308 F.2d 355 (federal law); *Brown v. Collins,* (1969) La.App., 223 So.2d 453 (admissible under medical records statute); *Missouri-Kansas-Texas Railroad Company v. May,* (1980) Tex., 600 S.W.2d 755 (admissible where in regular course of business and statutory requirements met); *State v. Martorelli,* (1975) 136 N.J.Super. 449, 346 A.2d 618.

This presumption suffices to permit admission of the test result: the party objecting to its admission is free, of course, to attack the regularity of the test procedure and the competency of the technician upon cross-examination or through his own witnesses. *See Brown v. Collins,* 223 So.2d 453 (statute provides party may call and examine persons making record as witnesses under cross-examination). The presumption of regularity holds true only where the test is commonly performed in the routine business of the hospital. It does not apply where the test is rarely performed, is of an unusual type or is unusually difficult to perform or interpret. *Thomas v. Hogan,* (4th Cir.1962) 308 F.2d 355. *See McCormick, Handbook on the Law of Evidence,* 732–33 (2d ed. 1972).

Other jurisdictions take a middle ground, requiring a showing of some additional foundation before they will admit the result of a simple diagnostic test in medical records. The foundation required is beyond that necessary to establish the medical records are kept in the ordinary course of business but short of one requiring the testimony of the technician actually performing the test. Although courts differ in what comprises an adequate "middle ground" foundation, generally, testimony from an individual or individuals who can explain how the test was performed and verify that the test was performed by qualified personnel is sufficient. *See Wadena v. Bush,* 305 Minn. 134, 232 N.W.2d 753.

On the other hand, still other jurisdictions require the laying of a traditional foundation for the admission of expert opinion before the result of a simple diagnostic test may be admitted via a patient's medical record. *See* Annot., 80 A.L.R.3d 456 (admissibility under state law of hospital record relating to intoxication or sobriety of patient).

Because of our resolution against Fendley's position based on the lack of chain of custody for a fungible substance, we are not called upon to decide in the instant case what path Indiana will follow: whether it will require the particular entry to be medically germane and whether it will adhere to the traditional approach requiring a separate foundation for the admission of an expert opinion within the business record, whether it will include the result of a simple and routinely performed diagnostic test within

## II.

 Fendley contends the trial court erred in refusing to allow her expert witness to testify, based on the results of Ford's blood alcohol test, as to his opinion of Ford's ability to operate a motor vehicle the morning of the accident. Citing *Rosenbalm v. Winski*, (1975) 165 Ind.App. 378, 332 N.E.2d 249, and *Kranda v. Houser-Norborg Medical Corp.*, (1981) Ind.App., 419 N.E.2d 1024, *rehearing denied*, (1981) Ind.App., 424 N.E.2d 1064, Fendley argues her expert's opinion was not inadmissible as substantive evidence because of the hearsay rule.

It is true, as Fendley asserts, that an expert opinion is not necessarily inadmissible because it is based in part on a report inadmissible as substantive evidence because of the hearsay rule. Here, however, because the trial court properly excluded the test results due to the inadequacy of the chain of custody of the blood sample her argument is unavailing. There is no error.

Moreover, Gray, Fendley's expert witness, was permitted to do more than offer his opinion on the effects of intoxication in general on driver behavior. He was permitted to testify, based upon other testimony Ford was "extremely intoxicated", Record at 178, on the likely effects of Ford's "extreme intoxication" on his driving. Thus, even if the trial court had erred in excluding Gray's testimony based upon a particular blood alcohol content of Ford's blood,[4] the error was harmless.

Ford raises on cross-appeal the trial court's alleged error in refusing three of his tendered instructions. Because we affirm the trial court's judgment in favor of

Ford, we do not reach the instruction issues raised in his cross-appeal.

Judgment affirmed.

BUCHANAN, C.J., and SULLIVAN, J., concur.

---

the business records exception without requiring a supplemental foundation, or whether it will require some sort of middle ground supplemental foundation.

**4.** By preliminary questions propounded by Ford's counsel to Fendley's expert, it was established the expert, in testifying as to the effect of Ford's state of extreme intoxication upon his driving, was assuming a blood alcohol content

"above the legal limit of point, one, zero (.10)." Record at 457. He further explained that, in fact, he did know "how far, if any" Ford's blood alcohol content exceeded .10 because, "I know what his blood alcohol content was, yes." Record at 458.