**Karey A. PIETERS, Plaintiff,**

v.

**B–RIGHT TRUCKING, INC., Defendant.**

**Civ. No. H 83–1.**

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Oct. 6, 1987.

C. Jerome Smith, R. Cordell Funk, Funk & Foster, Hammond, Ind., for plaintiff.

Peter G. Koransky, Spangler, Jennings, Spangler & Dougherty, Merrillville, Ind., for defendant.

## ORDER

WILLIAM C. LEE, District Judge.

In this order, the court will consider two motions in limine filed by the defendant and a motion in limine filed by the plaintiff. This cause is set for trial on October 13, 1987. All three motions are fully briefed and a phone conference was held on October 1, 1987. For the following reasons, all three motions will be denied.

### I.

### *Facts*

The plaintiff and her fiance were traveling northbound on State Road 912 in Gary, Indiana, when the automobile which they were in crashed into the rear of a semi-tractor trailer which had stopped in the traveled portion of State Road 912 because the tractor had run out of diesel fuel. The accident occurred at approximately 1:00 a.m. on November 6, 1982. The driver of the tractor had left it abandoned after it had run out of fuel and had apparently not placed flares or other warning devices behind or beside the tractor.

The plaintiff's fiance, who was driving the automobile, was pronounced dead within hours of the impact. The plaintiff's fiance bled massively at the scene of the accident and never recovered consciousness. The plaintiff survived the impact, but suffered various physical injuries including a broken thumb and an injured hip, which caused her to miss approximately three and one-half months of work.

### II.

### *Analysis*

This is a diversity case. The parties agree that the substantive issues are governed by Indiana law. At trial, the plaintiff will attempt to prove that her damages resulted from the defendant's negligence. The defendant has asserted the defenses of contributory negligence and incurred risk, and will attempt to show that the plaintiff's fiance was intoxicated at the time of the accident and that his intoxication was the proximate cause of the plaintiff's injuries.

### A. *Plaintiff's Motion in Limine*

■ The plaintiff has filed a motion in limine to prevent the defendant from suggesting to the jury that a blood alcohol test was performed on the plaintiff's fiance until the defendant has demonstrated outside the presence of the jury that the blood alcohol test is itself admissible. The plaintiff anticipates that the defendant will seek to introduce either a coroner's report or a hospital record to show that the plaintiff's fiance had a blood alcohol content of .23%. The plaintiff's motion turns on the admissibility of the coroner's report or the hospital

record under the hearsay exception set forth in Federal Rule of Evidence 803(6).

The plaintiff acknowledges, in the brief which was submitted in support of the motion, that hospital records are business records for purposes of Federal Rule of Evidence 803(6). The plaintiff argues, however, that the defendant must show chain of custody before the hospital record can be admitted under the Rule. The plaintiff does not believe that the defendant can show who ordered the blood drawn, that the blood was actually that of the deceased, or that the blood made it to the hospital laboratory, so that the lab report reflects a test which was done on the decedent's blood.

In support of her argument that the defendant must show chain of custody before the hospital record is admissible under 803(6), the plaintiff cites to *Fendley v. Ford,* 458 N.E.2d 1167 (Ind.App.1984). In *Fendley,* the court held that the trial court had not erred in refusing to admit hospital records containing blood alcohol test results where a chain of custody for the blood sample was not established. The court reasoned that Fendley had failed to offer any evidence as to the means by which the blood specimen was sent to and received by the laboratory in which it was analyzed. *Id.* at 1170. The court based its decision on *Baker v. State,* 449 N.E.2d 1085 (Ind.1983), and other Indiana cases, all of which require a showing of chain of custody. *See, e.g., Orr v. Econo–Car of Indianapolis, Inc.,* 150 Ind.App. 411, 276 N.E.2d 524 (1971) (chain of custody of blood samples); *Arnold v. State,* 436 N.E.2d 288 (Ind.1982) (chain of custody of a "rape kit"). The plaintiff's reliance on Indiana law is misplaced, however, since the Federal Rules of Evidence and federal law govern the admissibility of evidence in diversity cases. *Flaminio v. Honda Motor Co., Ltd.,* 733 F.2d 463, 470–71 (7th Cir. 1984); *In re: Air Crash Disaster Near Chicago, Illinois,* 701 F.2d 1189, 1193 (7th Cir.1983).

 The business records exception to the hearsay rule found in Federal Rule of Evidence 803(6) does not require a showing of chain of custody. In pertinent part, the Rule excludes from the hearsay rule:

[a] memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method of circumstances of preparation indicate lack of trustworthiness.

Fed.R.Evid. 803(6). In order for evidence to be admissible under Rule 803(6), it must be "transmitted by" a declarant "with knowledge" in the ordinary course "of a regularly conducted business activity...." *Cook v. Hoppin,* 783 F.2d 684, 689 (7th Cir.1986). While the Rule requires that a custodian or qualified witness testify that the requirements of the business records exception have been met, there is no requirement that the "qualified witness" must have personally participated in or observed the creation of the document. *United States v. Moore,* 791 F.2d 566, 574 (7th Cir.1986). *See also United States v. Keplinger,* 776 F.2d 678, 693 (7th Cir.1985). "The phrase 'qualified witness' is to be broadly interpreted as requiring only someone who understands the system." *Moore,* 791 F.2d at 575, citing *Keplinger,* 776 F.2d at 694. In the case of a hospital, evidence is admissible under the Rule if transmitted by a declarant (such as a doctor or a nurse) who reports to the recordkeeper as part of a regular business routine in which they are participants. *Hoppin,* 783 F.2d at 689–90. If the record meets these tests, was kept in the course of a regularly conducted business activity, and if it was the regular practice of the business to make the record, as shown by the witness, then it is admissible under the Rule.

The Rule does not impose an additional requirement that chain of custody be demonstrated. *Thomas v. Hogan,* 308 F.2d

355, 360 (4th Cir.1962). In *Thomas,* the court held that the results of a blood test for intoxication conducted on the plaintiff and contained in a hospital record were admissible under the federal Shop-Book Statute, 28 U.S.C. § 1732, the predecessor to Rule 803(6). Reversing the trial court's refusal to admit the results, the court held that the statute supplies a "presumption that diagnosis and scientific tests are properly made by qualified personnel, if the recorded information reflects usual routine of the hospital and if it is the practice to record such data contemporaneously or within a reasonable time." *Id.* at 360. Noting that human life often depends on the accuracy of hospital records, the court reasoned that it is reasonable to presume that hospital records are trustworthy. *Id.* at 361. Along these lines, this court notes that the parties have stipulated in the pretrial order to the authenticity of all medical records relating to the deceased.

Any hospital records or coroner's reports which the defendant attempts to introduce into evidence at trial will be admitted if they meet the requirements of the business records exception as set forth above. Under federal law, the defendant is not required to demonstrate chain of custody in order to satisfy the requirements of the business records exception and to that extent the plaintiff's motion in limine is denied. The admissibility of the documents will depend upon the foundation which is laid at trial. If the defendant can satisfy the requirements of Federal Rule of Evidence 803(6) as set forth above, the records will be admitted into evidence. The blood alcohol content of the plaintiff's fiance is clearly relevant to the defenses of contributory negligence and incurred risk and meets the tests of Rules 401 and 403.

### B. *Recovery of Emotional Distress Damages*

■ The defendant has filed two motions in limine which relate to recovery of emotional distress damages. In one motion, the defendant seeks to prevent the plaintiff from introducing evidence concerning the emotional trauma suffered by the plaintiff as a result of witnessing her fiance's death.

In the second motion, the defendant seeks to prevent the plaintiff from introducing a photograph of the decedent. The second motion tags along with the first. If the plaintiff is not entitled to recover damages for emotional distress caused by the trauma she suffered as a result of witnessing her fiance's death, then a photograph of the decedent would be inadmissible because it would not be relevant to any issue in this case. If, on the other hand, the plaintiff is entitled to recover emotional distress damages for the trauma she suffered as a result of witnessing her fiance's death, then a picture of the decedent would be relevant to the issue of damages. Of course, the photograph might still be inadmissible under Federal Rule of Evidence 403, even if it is relevant, if its prejudicial impact outweighs its probative value. Since the issue regarding the admissibility of the photograph will not need to be dealt with if the plaintiff is not entitled to recover damages for emotional distress suffered as a result of witnessing her fiance's death, the court will first decide whether Indiana law allows the plaintiff to recover emotional distress damages suffered as a result of witnessing her fiance's death.

State courts have employed three different rules when deciding whether emotional distress damages should be awarded: the impact rule, the zone of danger rule, and the foreseeability rule. The impact rule, the most restrictive of the three, provides that there can be no recovery for emotional distress when there has been no immediate physical impact to the plaintiff. The zone of danger rule provides that emotional distress damages can only be recovered if the plaintiff was within the range of ordinary physical peril. The foreseeability test, the least restrictive test, generally provides recovery where the defendant should have foreseen the fright or shock severe enough to cause substantial injury in a normal person.

Indiana follows the impact rule. The rule was adopted in 1897 in *Kalen v. Terre Haute & I.R.R.,* 18 Ind.App. 202, 47 N.E. 694 (1897), and has steadfastly been adhered to ever since. *See, e.g., Captain & Co., Inc. v. Stenberg,* 505 N.E.2d 88, 100

(Ind.App.1987). As one commentator has noted, the English case of *Victorian Railways Commissioners v. Coultas*, 13 App. Cas. 222 (1888), has generally been recognized as inspiring the impact rule in the United States and was considered by the court in *Kalen*. Note, *Recovery for Negligent Infliction of Emotional Distress: Changing the Impact Rule in Indiana*, 54 Ind.L.J. 467 (1979) (hereinafter *Impact*). Only thirteen years later the King's Bench declined to require an impact and adopted the zone of danger rule in *Dulieu v. White & Sons*, 2 K.B. 669 (1901). In 1925, English law went even further and abandoned the zone of danger rule and adopted a duty approach to liability for negligently inflicted emotional distress in *Hambrook v. Stokes Bros.*, 1 K.B. 141 (1925). The duty approach, which remains the test in England today, is analogous to the foreseeability approach taken by many American state courts. *See Impact*, at 473. It is somewhat ironic that American jurisdictions which were inspired to adopt the impact rule by English law have retained that rule long after its abandonment by English courts.

The impact rule is the law of Indiana, its interesting history notwithstanding. As articulated by Indiana courts, the impact rule provides that "damages for emotional distress are recoverable only when accompanied by and resulting from physical injury." *Little v. Williamson*, 441 N.E.2d 974, 975 (Ind.App.1982). Thus, "in Indiana a person cannot recover damages for mental suffering unless he suffers physical injury." *Dunn v. Cadiente*, 503 N.E.2d 915, 919 (Ind.App.1987). The rule applies "whether the complaint alleges negligent or intentional infliction of emotional distress." *Little*, 441 N.E.2d at 975. *See also Kaletha v. Bortz Elevator Co.*, 178 Ind.App. 654, 383 N.E.2d 1071 (1978) (intentional); *Kroger Co. v. Beck*, 176 Ind.App. 202, 375 N.E.2d 640 (1978) (negligent). Indiana has, however, created an exception to the rule in certain cases of intentional infliction of emotional distress. *Little*, 441 N.E.2d at 975, *quoting Charlie Stuart Oldsmobile v. Smith*, 171 Ind.App. 315, 357 N.E.2d 247, 254 (1976). The parame-

ters of this exception regarding intentional infliction of emotional distress has been criticized in Indiana. *See Elza v. Liberty Loan Corp.*, 426 N.E.2d 1302 (Ind.1981) (Hunter, J., dissenting to denial of transfer). While an exception has been made for cases of intentional infliction of emotional distress, no Indiana cases have been found where negligent infliction of emotional distress actions have been excepted from compliance with the impact rule.

Armed with Indiana's impact rule, which clearly applies with full force in this case, defendant argues that the plaintiff cannot recover damages for emotional distress suffered as a result of witnessing the death of her fiance. Before analyzing the case law relied on by the defendant, it is important to note that defendant is not making the typical argument which is made in impact cases, the argument that the plaintiff cannot recover damages for emotional distress because the plaintiff has suffered no physical impact. The plaintiff was in the automobile with her fiance when it crashed into the rear of the defendant's semi-tractor trailer. As a result of the impact she suffered a broken thumb and a bruised hip and missed three and one-half months of work. She clearly suffered "contemporaneous physical injury." *Little*, 441 N.E.2d at 975. In that sense, there can be no doubt that she met the requirement of the impact rule and is entitled to recover damages for her emotional distress. The defendant would concede this much, but argues that the impact rule limits her recovery of emotional distress damages to those suffered as a result of her own injuries, so that she cannot recover damages for emotional distress caused by her fiance's injuries or by his death. The impact rule is therefore being used by the defendant not only to determine when emotional distress damages may be recovered, but also to determine the extent of the damages which may be recovered.

### (i) Indiana Impact Cases

In making this argument, the defendant relies primarily on Indiana cases. Both the defendant and the plaintiff discuss the oft-

cited case of *Little v. Williamson*, 441 N.E.2d 974 (Ind.App.1982). In *Little*, the plaintiff, his older sister, and their puppy were walking along a road when they were confronted by a Great Dane owned by the defendant. The plaintiff's sister grabbed the puppy in her arms in an effort to protect it, but the Great Dane ripped the puppy out of her arms and killed it, in the process biting the girl's arms, breaking two bones, and causing numerous lacerations. *Id.* at 974. The parties stipulated that the plaintiff had suffered no physical injuries. Noting that the plaintiff had suffered no impact and declining to overrule the impact rule, the court affirmed the trial court's grant of summary judgment for the defendant. *Id.* at 975.

The *Little* case stands for the proposition that absent impact, a plaintiff cannot recover for negligent infliction of emotional distress. The holding in *Little* does not control the issue in this case, since the plaintiff in this case clearly suffered an impact and clearly is entitled to emotional distress damages. Indeed, Judge Shields specifically stated, "We offer no opinion whether there would have been an issue of material fact if the Great Dane had knocked Little down but not harmed him, *i.e.*, if our impact rule requires actual harm or if mere physical contact is sufficient." *Id.* at 975 n. 3. This footnote seems to suggest at least that Indiana has not decided whether impact without physical harm can give rise to a cause of action for negligent infliction of emotional distress. If, as Judge Shields suggests, the Great Dane had knocked the plaintiff down but had not harmed the plaintiff, then the plaintiff, in his action for emotional distress damages, would be seeking damages only for the injuries caused to his older sister. He would have suffered a noninjurious impact which would entitle him to emotional distress damages because the "impact rule" had been met. This court notes that Judge Shields' hypothetical goes further than the facts of this case go, since the plaintiff in this case not only suffered an impact but also sustained her own physical injuries. While Judge Shields' comments in footnote 3 of *Little* do not resolve the question in this case,

they indicate that Indiana courts have not decided that emotional distress damages can only be recovered for one's own injuries after an impact has been sustained. A review of Indiana case law will show that this is an open issue.

The defendant relies on the early case of *Cleveland, C.C. & St. Louis Ry. v. Stewart*, 24 Ind.App. 374, 56 N.E. 917 (1900). In *Cleveland*, the plaintiff's daughter was dragged along the platform at a train station by the force of a moving train and was in danger of being drawn under the wheels of the train and killed. *Id.* at 918. The plaintiff sustained no impact whatsoever, but attempted to recover damages for negligent infliction of emotional distress in the form of sickness and disease. *Id.* at 918. The court framed the issue as follows: "Will an action lie for damages for fright, resulting in nervous prostration and permanent impairment of health, when such fright does not arise from impending or apparent danger to the party demanding damages, but from impending, apparent, and possible danger or peril to another?" In answering this question in the negative, the court held that the defendant owed no duty to the plaintiff, *id.* at 919, that any negligence of the defendant was not the proximate cause of the plaintiff's damages, *id.* 919–20, and that the defendant could not have foreseen the plaintiff's emotional distress damages. *Id.* at 921. The opinion is an interesting combination of all three rules which govern the recoverability of emotional distress damages (impact, zone of danger, foreseeability), but it clearly stresses the fact that the plaintiff suffered no impact. "No pretense is here made that any immediate physical injury resulted to [the plaintiff]." *Id.* at 919. "[The plaintiff] did not receive any immediate physical injury ..." *Id.* at 922. "Witnessing an injury or a threatened injury to another, even though it causes fright, is not in itself an injury to the person witnessing it. There must be some direct physical connection between the cause an effect." *Id.* at 922.

The holding in *Cleveland* can and has been cited for the proposition that absent

impact, a plaintiff cannot recover damages for emotional distress in Indiana. *See Little*, 441 N.E.2d at 975 (citing *Cleveland* for that proposition). The holding in *Cleveland* cannot, however, be cited for the proposition that a plaintiff who has suffered impact and physical injury can only recover damages for emotional distress to her own injuries and not those of another caused by the same impact. As noted by the *Cleveland* court numerous times throughout its opinion, the plaintiff sustained no physical impact or injury. The impact rule was thus used in the way in which it is typically used: that is, absent impact there can be no recovery for emotional distress.

Defendant also cites *Boston v. Chesapeake & O. Ry. Co.*, 223 Ind. 425, 61 N.E. 2d 326 (1945). In *Chesapeake*, the plaintiff's automobile was struck while crossing railroad tracks and the plaintiff was thrown around inside the automobile. The plaintiff suffered traumatic shock, could not sleep, could not eat or drink, and became seriously ill. *Id.* at 328. The Indiana Supreme Court reversed the trial court's grant of a preemptory instruction, with instructions to the trial court to grant a new trial and permit the appellant to amend his complaint. *Id.* at 328. The court reasoned "that there was some evidence of negligence and of physical injury; that there was some evidence of shock and fright contemporaneous with and growing out of the physical injury as the natural and direct result thereof. Under such circumstances, the case should have been submitted to the jury for its determination. It was error to give the preemptory instruction." *Id.* at 328. While the court notes throughout that emotional distress damages cannot be recovered for remote consequences of an injury, the case clearly stands for the proposition that where there has been an impact, the question of emotional distress damages must be left for the trier of fact, given the appropriate guidelines. *Id.* at 327–28.

The defendant's hypertechnical reading of *Chesapeake* is not justified. By lifting the language, mental distress damages "must appear to be the natural and direct result of the physical injury, and not merely a remote consequence thereof ..." out of the opinion, the defendant argues that *Chesapeake* stands for the proposition that a plaintiff who has suffered an impact and is entitled to emotional distress damages can only recover damages for her own injuries and not those of another, even though they resulted from the same impact. Plaintiff in *Chesapeake* was alone when his car was struck by the train. The language in the court's opinion, therefore, cannot possibly be read to limit the recoverability of emotional distress damages caused by witnessing the injuries and death of another. It is clearly only intended to establish the parameters of emotional distress damages.

The cases of *Little, Cleveland,* and *Chesapeake*, cited by the defendant, stand only for the proposition that absent impact or contemporaneous physical injury, a plaintiff cannot recover damages for emotional distress. The holdings of those cases cannot be extended to preclude recovery for emotional distress damages caused by witnessing the injuries and death of another, when the plaintiff has suffered an impact and has sustained physical injury and when the emotional distress damages caused by the plaintiff's own injuries and the injuries of another all result from the same impact and ultimately from the same negligence. The three cases which the court has reviewed are the three Indiana cases upon which the defendant principally relies. A thorough review of Indiana's other impact cases convinces the court that the impact rule, as applied by Indiana courts, has not been used to preclude recovery for emotional distress due to another's injuries when the plaintiff has suffered an impact and contemporaneous physical injury and when the other injuries and the plaintiff's injuries result from the same impact. *See, e.g., Orkin Exterminating Co., Inc. v. Walters*, 466 N.E.2d 55, 61 (Ind.App.1984) ("... our cases consistently hold negligent infliction of emotional distress, absent contemporaneous physical injury, is not compensable."); *Baker v. American States Insurance Co.*, 428 N.E.2d 1342, 1348–49 (Ind.App.1982) (a person can recover dam-

ages for mental anguish only when it is accompanied by, and results from, a physical injury); *Charlie Stuart Oldsmobile, Inc. v. Smith*, 171 Ind.App. 315, 357 N.E.2d 247 (1976) (restating impact rule).

The case of *Kroger Co. v. Beck*, 176 Ind.App. 202, 375 N.E.2d 640 (1978), is of particular interest. In that case, the plaintiff's throat was punctured by a large hypodermic needle used for injecting animals when she bit into a piece of steak which had been purchased at a Kroger grocery store. On appeal, Kroger argued that the plaintiff's throat had only been pricked, that no appreciable injury had occurred, and that the psychological injury for which the trial court awarded damages was only related to a fear of what *might have happened* had the needle been swallowed, and was not directly related to the contemporaneous physical pricking. *Id.* at 642. The Indiana Court of Appeals rejected Kroger's arguments and affirmed the judgment of the trial court, noting that it is for the trier of fact to determine whether the injury produces mental distress. The court held that the "trial court did not commit error when it considered mental distress which had been based on an uncontroverted contemporaneous physical injury." *Id.* at 645. In this case, defendant B–Right contends that the emotional distress damages sought by the plaintiff are not directly related to the plaintiff's contemporaneous physical injuries. *Kroger* teaches, however, that once injury has occurred, it is for the "trier of fact to determine whether that injury was the catalyst producing the mental distress."

The last line of Indiana cases from which the court can glean insight are those cases which employ the exception to the impact rule, allowing damages for emotional distress where intentional conduct is present. When the defendant's conduct is intentional and the conduct should reasonably have been anticipated to provoke severe emotional disturbance, Indiana courts have allowed damages for mental distress. *Elza v. Liberty Loan Corp.*, 426 N.E.2d 1302, 1304 (Ind.1981) (Hunter, J., dissenting to denial of transfer). As a review of Justice Hunter's thorough opinion in *Elza* shows, this exception allows for the recovery of mental distress damages without regard to impact. More importantly, for purposes of this case, where defendant's conduct is intentional, the focus of a court's inquiry becomes the mental distress of the plaintiff. For example, in *Montgomery v. Crum*, 199 Ind. 660, 161 N.E. 251 (1928), the court held that abduction of the plaintiff's child gives rise to compensable injuries for mental distress. The focus is not who was abducted but who was distressed. The defendant in this case wants the court to focus on who was injured, *i.e.*, the plaintiff may recover mental distress damages for her own injuries but may not recover mental distress damages for the injuries and death of her fiance. The defendant's argument draws the court's attention away from the proper lines of inquiry. The first question is whether emotional distress damages may be recovered. In this case they may because the plaintiff satisfied the impact rule. In intentional cases they may because the exception provides for emotional distress damages. The second question is whether the plaintiff was emotionally distressed. If so, then Indiana cases allow for recovery and they do not back up the analysis to ask whether the distress was caused by the plaintiff's own injuries or the injuries of the person sitting next to her when the crash occurred.

That Indiana would allow the plaintiff to recover damages for emotional distress caused by her fiance's death can also be seen by examining the reasons for the impact rule. There are three principal policy reasons for the impact rule. First, courts feared that absent impact, claims for emotional distress would flood courts with litigation. Second, courts feared that the absence of an impact requirement would spawn fraudulent claims. Third, courts feared that it would be too difficult to prove the causal connection between the damages claimed and the defendant's negligence. *See Bass v. Nooney Corp.*, 646 S.W.2d 765 (Mo.1983).

Even if assumed to be true, none of these reasons for the impact rule may logically be used to bar the plaintiff's recovery. The plaintiff already has a claim for emo-

tional distress for her own injuries. Allowing recovery for emotional distress due to her fiance's injruies will open no floodgates. There is no suggestion that her claim is fraudulent. Common sense teaches the opposite. An award of damages for emotional distress resulting from the injuries and death of a future husband is anything but fraudulent. Indeed, the great portion of the plaintiff's emotional distress might well have resulted from her future husband's injuries and death. Proving damages will be no more difficult if she recovers for the distress caused by her fiance's injuries and death. The recovery will certainly be more accurate and complete, which is precisely the kind of recovery the law ought to give.

The court is in no way questioning Indiana's adherence to the impact rule, although scholars agree that the fears which form the foundation of the rule have little basis is reality. *See* Prosser, *Insult and Outrage*, 44 Cal.L.Rev. 40 (1956); Comment, *Negligently Inflicted Mental Distress: The Case For an Independent Tort*, 59 Geo.L.J. 1237 (1971); Comment, *Negligence and the Infliction of Emotional Harm: A Reappraisal of the Nervous Shock Cases*, 35 U.Chi.L.Rev. 512 (1968); Prosser, *Intentional Infliction of Mental Suffering: A New Tort*, 37 Mich.L.Rev. 874 (1939). Extensive collections of other writings appear in 63 Geo.L.J. 1179 (1975); Comment, *Bystander Recovery for Negligent Infliction of Emotional Distress in Iowa: Implementing an Optimal Balance*, 67 Iowa L.Rev. 333 (1982). *See also Impact*, at 470. The court simply points out the fact that the reasons for the rule, even if taken as true, do not prevent recovery in this case. The reasons for the rule essentially relate to the question of when damages for emotional distress are recoverable, *i.e.*, upon impact. Once a plaintiff meets this test the reasons for the rule fall away and cannot be resurrected to raise an artificial wall. It makes no sense to use the rule in that way.

#### (ii) Analogous Cases From Other Jurisdictions

As the foregoing analysis of Indiana cases shows, the precise question which the court has been asked to decide has not yet been decided in Indiana. The court is convinced, however, from its analysis of Indiana case law and from the reasons for the impact rule, that if an Indiana court were presented with this issue it would hold without reservation that once a plaintiff has met the impact test, that plaintiff may recover damages for emotional distress stemming not only from her own injuries, but also, from the injuries of another if those injuries occur in the same impact. One other jurisdiction following the impact rule, which addressed this precise issue, drew that conclusion. The court's search for analogous cases was complicated by the fact that nearly all states have abandoned the impact rule. As Justice Hunter noted in *Elza* in 1981, only five of the nation's fifty-one jurisdictions "regard the 'impact' rule as a viable proposition of law." *Elza*, 426 N.E.2d at 1308. Since then, Illinois and Missouri have abandoned the rule, leaving only three jurisdictions, Florida, Georgia, and Kentucky.

In *National Car Rental System, Inc. v. Bostic*, 423 So.2d 915 (Fla.App.1983), petition for review denied, 436 So.2d 97, 99 (1983), the trial court held that the plaintiff could recover damages for his emotional pain and suffering caused not only by his own injuries, but also by the death of his mother. Prior to trial the defendant filed a motion in limine seeking to exclude evidence of the plaintiff's emotional distress "caused by being present and witnessing his mother's death at the scene [of the accident] and to prevent pictures of the deceased from being entered into evidence." Noting that Florida follows the impact rule, the court affirmed the trial court's denial of the motion and held that "we find that the instant case falls clearly within that rule." The court did note that the plaintiff's emotional problem was caused in part by his inability to render aid and comfort to his mother because of the injuries he had sustained from the impact. Judge Bearson concurred in the majority's result but argued that the impact rule should be abolished "as it has been in other

jurisdictions, by some more enlightened rule." *Id.* Whether the plaintiff's emotional injuries in this case resulted in any way from her inability to help her fiance due to her own injuries the court cannot say. Even assuming that the evidence shows that the plaintiff did not attempt to help her fiance, that would be an irrational basis for distinguishing this case from *National Car.* The Florida court's holding in *National Car,* therefore, because Florida is an impact state, strongly suggests that Indiana would allow recovery of damages for emotional distress due to the plaintiff's fiance's injuries.

*National Car* was the only analogous found from an impact state. After Justice Hunter's dissent in *Elza,* both Illinois and Missouri abandoned the impact rule. In *Rickey v. Chicago Transit Authority,* 101 Ill.App.3d 439, 57 Ill.Dec. 46, 428 N.E.2d 596 (1981), *aff'd,* 98 Ill.2d 546, 75 Ill.Dec. 211, 457 N.E.2d 1 (1983), the court held that the plaintiff could recover damages for emotional distress caused when he observed his brother become entangled in an escalator. *Id.* 57 Ill.Dec. at 47, 428 N.E.2d at 597. Noting that Illinois had consistently barred recovery for negligent infliction of emotional distress absent contemporaneous physical impact and noting that the plaintiff had suffered no physical impact whatsoever, the court abandoned the impact rule and held that the allegations regarding the consequences of the plaintiff's distress were sufficient to establish a real, compensable injury as opposed to mere temporary fright. *Id.* 57 Ill.Dec. at 49, 428 N.E.2d at 599. Similarly, in *Bass v. Nooney Co.,* 646 S.W.2d 765 (Mo.1983) (en banc), the Supreme Court of Missouri abandoned the impact rule. Noting that the rule had come under a barrage of scholarly criticism and noting that experience had shown the rule to be unfair and inequitable, the court held that the time had come for Missouri to join the mainstream of Anglo-American jurisprudence by abandoning the classic rule in favor of a rule which permits recovery for emotional distress provided: "(1) the defendant should have realized that his conduct involves an unreasonable risk of causing the distress;

and (2) the emotional distress for mental injury must be medically diagnosable and must be of sufficient severity so as to be medically significant." *Id.* The court's research discloses, as the foregoing discussion of *National Car, Rickey,* and *Bass* makes clear, that three of the five jurisdictions (and possibly all) which followed the impact rule when Justice Hunter wrote his dissent in *Elza* in 1981 would presently allow the plaintiff in this case to recover the emotional distress damages sought.

Non-impact jurisdictions would clearly allow recovery. In *Keck v. Jackson,* 122 Ariz. 114, 593 P.2d 668 (1979), the court held that the plaintiff could recover damages for emotional distress caused by her mother's injuries and death. The plaintiff's mother was hit by a car when she and the plaintiff stopped to repair a flat tire. In *Dillon v. Leg,* 68 Cal.2d 728, 69 Cal. Rptr. 72, 441 P.2d 912 (1968), the plaintiff recovered damages for emotional distress after witnessing a car strike and roll over her daughter. In *Genzer v. Mission, Texas,* 666 S.W.2d 116 (Tex.App.1983), a child was killed in an explosion. The court held that the parents and grandparents of the child could recover damages for emotional distress caused by witnessing the child's death. The court allowed recovery for emotional distress in *Eyrich v. Dam,* 193 N.J.Super. 244, 473 A.2d 539, 544–45 (1984). In *Eyrich,* the plaintiff, the neighbor of a child which he rescued from the jaws of a circus lion, recovered emotional distress damages without regard to any distinction between his injuries and the child's. In all of these jurisdictions the plaintiff in this case would recover.

It would take too long to review the many other analogous cases in non-impact jurisdictions which would allow plaintiff in this case to recover damages for emotional distress due to her fiance's injuries. In jurisdictions which follow the less restrictive zone of danger and foreseeability rules, plaintiffs often recover damages for emotional distress when they have suffered no impact or injuries at all. Take the following example. A father and son are walking down the street when the son is hit

by a car, causing the father severe mental distress. While the father may be entitled to recover under the foreseeability and zone of danger rules, he would clearly not be entitled to recover under the impact rule because he had suffered no impact. The court therefore realizes that cases from non-impact jurisdictions are distinguishable. The court refers to these cases simply to show that the approach taken by the huge majority of jurisdictions would allow the plaintiff to recover. The trend in this area of the law clearly favors recovery. If an Indiana court was presented with the defendant's argument that the impact rule should be extended even further than it has been extended thus far by Indiana courts, this court is convinced that it would reject that argument and allow recovery for the emotional distress caused to the plaintiff by her fiance's injuries and death. With that in mind, the court refers the reader to the following secondary authorities and the cases cited therein. Annotation, *Immediacy of Observation of Injury as Affecting Right to Recover Damages for Shock or Mental Anguish from Witnessing to Another*, 5 A.L.R. 4th 833 (1981); Annotation, *Right to Recover Damages in Negligence for Fear of Injury to Another, or Shock or Mental Anguish at Witnessing Such Injury*, 29 A.L.R. 3d 1337 (1970); RESTATEMENT OF TORTS §§ 313, 436 (1977) (*see also* cases cited in appendix).

Thus far, two things have been shown. First, while there are no Indiana cases directly on point the existing cases do not preclude recovery and the reasons for the impact rule fall away after a plaintiff has suffered an impact and should not be resurrected to bar recovery for mental distress due to the injuries of another which were suffered in the same impact. Second, cases from other impact and non-impact jurisdictions would allow the plaintiff to recover. Indeed, in the overwhelming majority of states, the hypertechnical and unprincipled distinctions which the defendant seeks to draw would be considered absurd. For these reasons, the court holds that the plaintiff can recover emotional distress damages because she suffered an impact and no artificial barrier will be drawn to exclude emotional distress damages caused by the injuries and death of her fiancee. The defendant's citations to the First Circuit's cases of *Laaperi v. Sears, Roebuck & Co., Inc.*, 787 F.2d 726 (1st Cir.1986) and *Bullard v. Central Vermont Ry.*, 565 F.2d 193 (1st Cir.1977), do not change that outcome. It is true that both *Laaperi* and *Bullard* stand for the proposition that damages for mental suffering under Massachusetts law cannot be recovered to the extent that they result from another's injuries. But neither *Laaperi* nor *Bullard* is based on an impact rule; both cases are based on a separate and distinct rule governing the recovery of damages for mental distress which is peculiar to Massachusetts. That the holding in *Laaperi* is not based upon the impact rule is made clear by the fact that Massachusetts abandoned that rule in 1978 in the case of *Dziokonski v. Babineau*, 375 Mass. 555, 380 N.E.2d 1295 (1978). In *Babineau*, a child's mother suffered physical and emotional shock after her arrival at the scene of an accident where her daughter had been hit by a car and was lying injured on the ground. The injured child's mother died as a result of the shock while riding as a passenger in the ambulance that was driving her daughter to the hospital. *Id.* at 1296. Notwithstanding the fact that the child's mother had suffered no physical impact or injuries, the court held that the complaint, which alleged that the mother's death resulted from the emotional distress caused by coming upon the scene of her injured child, stated a cause of action against the defendants, whose negligence was the cause of the child's injuries. *Id.* at 1297–99. The holding in *Laaperi*, therefore, was not based upon an impact rule and does not suggest that Indiana's impact rule would prohibit the plaintiff in this case from recovering full damages for her emotional distress.

### (iii) Admissibility of the Decedent's Photograph

◼ As noted earlier, the relevance of the decedent's photograph is dependent upon the plaintiff's recovery of damages

for emotional distress caused by the decedent's injuries and death. Since the plaintiff is entitled to recover those damages, the defendant's principal argument regarding the photograph, that it is not relevant, fails. The only remaining issue is whether the photograph meets the test of Federal Rule of Evidence 403. Under that Rule, even relevant evidence is excludable when its probative value is outweighed by any prejudicial impact which it might have. At this pre-trial stage, without having seen the photograph, the court would be loathe to rule on this issue. Accordingly, the court will determine whether the photograph is admissible under Rule 403 if and when it is offered into evidence at trial.

### Conclusion

The plaintiff's motion in limine is DENIED. Federal law does not require a showing of chain of custody. If the defendant can demonstrate that the records which it seeks to admit meet the tests enunciated in Federal Rule of Evidence 803(6), the records will be admitted. Both of the defendant's motions in limine are also DENIED. Indiana's impact rule cannot be extended to deprive a plaintiff of emotional distress damages when that plaintiff has suffered an impact and when the damages sought stem from injuries caused to another in the same impact. Since the injuries and ultimate death of the plaintiff's fiance are relevant to the recoverability of emotional distress damages, the plaintiff may seek to admit a photograph of the decedent at trial. If the photograph meets the standards of Rule 403 it will be admitted.