**Ronald I. GIBSON, Appellant,**

**v.**

**STATE of Indiana, Appellee.**

**No. 55A04-8609-CR-296.**

Court of Appeals of Indiana, Fourth District.

Feb. 11, 1988.

Stephen M. Sherman, Sherman & Johnson, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

MILLER, Presiding Judge.

As a result of a single vehicle automobile accident in which his nephew's arm was dismembered, Ronald Gibson was charged with violations of IND.CODE 9-11-2-2, operating a motor vehicle while intoxicated within five years of a prior conviction for operating while intoxicated; I.C. 9-11-2-4, operating while intoxicated causing serious bodily injury; and I.C. 35-42-2-2(a), crimi-

nal recklessness with a motor vehicle. The case was tried to a jury, which found Gibson guilty of the first two charges, but acquitted him of criminal recklessness. The trial court sentenced Gibson to a term of four years imprisonment and a fine of $10,000 for the violation of I.C. 9–11–2–2, and sentenced him to a consecutive term of four years and $10,000 for the violation of I.C. 9–11–2–4. Additionally, the court suspended Gibson's license "forever." Gibson appeals, alleging the trial court erred: 1) in not granting a hearing on his motion for change of venue; 2) in admitting evidence despite a break in the chain of custody; and 3) in admitting evidence obtained in a search conducted without probable cause. We reverse on the grounds stated in Gibson's first issue, but we address his second and third issues because they are likely to arise on remand. Gibson raises further issues which, because we reverse and because they might not arise on remand, we decline to address.

## FACTS

At approximately 9:30 p.m. on January 11, 1986, Ronald Gibson lost control of his truck as he attempted to make a left turn at the intersection of Main Street and Indianapolis Road in Mooresville. The truck, which was travelling at more than the 40 mile-per-hour posted speed limit, slammed into some metal poles. The collision severed the right arm of Ricky Randolph, Gibson's nephew, who was sitting on the passenger side of the truck.

Judith and Brian Grebel, two employees of the Wake Up gasoline station, witnessed the accident and reported it to the police. Sergeant Larry Mason of the Mooresville Police Department responded to the call. When he arrived within minutes of the accident, he observed Gibson, apparently unconscious, lying on the floor of the truck, his feet under the brake pedal and his head near the passenger side door. Randolph was lying on the truck's bench seat, with his head near the driver's side door and his feet near the passenger side door. He was holding his shoulder and calling for help. Randolph's right arm was lying outside the truck. Mason attempted to aid Gibson and Randolph, but could not because the doors of the truck were stuck.

Within minutes emergency medical personnel arrived. One of them, Kenneth Burwick, smelled the strong odor of alcohol on Gibson's breath, and he informed Mason. The emergency personnel succeeded in extracting Gibson and Randolph from the truck. Gibson was taken to Methodist Hospital in Indianapolis by helicopter.

Mason had seen an empty Budweiser bottle in the truck. Because of the bottle and Burwick's statement that Gibson smelled of alcohol, Mason decided to get a blood alcohol sample. He went to Methodist and, after informing the director of security, Clement Bruce Many, that he wanted the hospital to do a blood alcohol content (BAC) test on Gibson. Mason and Many went to the emergency room where Gibson was being treated.

In the emergency room, Margie Klink, a registered nurse, was assisting in Gibson's treatment. When she asked him, in the course of treatment, if he had been drinking, he replied that he consumed between a twelve pack and a case of beer. Klink drew approximately six vials of blood from Gibson's arm. She handed one vial to Amy Moore, another nurse. Moore, accompanied by Mason and Many, took this blood sample, which was marked with Gibson's name and patient number, to the emergency room satellite laboratory. When she arrived at the lab, she logged in the sample and gave it to the technician on duty, Richard Weitzel. Weitzel, accompanied by Mason and Many, took the sample, along with two other blood samples from Gibson, to the main lab. There, Weitzel gave the sample to Sheryl McNaughton, a medical technologist. She performed a BAC test which revealed Gibson's blood contained .257 per cent alcohol by weight.

Further investigation revealed Gibson had begun to drink at about 5:00 p.m., when his carpentry crew finished working for the day. He continued to drink at two bars in Mooresville until shortly before the accident. There was a conflict in the evidence as to how many beers Gibson had to

drink, but at least one witness testified she saw him drink at least six or seven beers while he was in one of the bars.

Before he was brought to trial, Gibson made a verified motion for change of venue from the county under Ind. Rules of Procedure, Criminal Rule 12. He filed this motion, which alleged he could not get a fair trial in the county because of prejudicial news coverage, more than ten days after he entered his plea of innocent. He did, however, allege that his injuries and medical treatment prevented him from learning of the allegedly prejudical material until after the expiration of the 10 day period. The trial court denied the motion without a hearing.

## DECISION

Gibson brings several issues for our review. We reverse on one of these issues, but address two others because they are likely to arise on remand. These issues are:

1.) Did the trial court err by failing to hold a hearing on Gibson's motion for a change of venue?

2.) Did the court err in finding the State established an adequate chain of custody for Gibson's blood sample?

3.) Did the court err in finding Sergeant Mason had probable cause to order a BAC test be performed on Gibson?

### ISSUE I. *Change of Venue*

Motions for change of venue in criminal trials are governed by C.R. 12, which provides in part:

> "In criminal actions and proceedings to enforce a statute defining an infraction, a motion for change of judge or change of venue from the county shall be verified or accompanied by an affidavit signed by the criminal defendant or the prosecuting attorney setting forth facts in support of the statutory basis or bases for the change. Any opposing party shall have the right to file counter affidavits within ten (10) days and after a hearing on the motion, the ruling of the court may be reviewed only for abuse of discretion.
>
> "In any criminal action, no change of judge or change of venue from the county shall be granted except within the time provided.
>
> "An application for change of judge or change of venue from the county shall be filed within ten (10) days after a plea of not guilty, or if a date less than ten (10) days from the date of said plea, the case is set for trial, the application shall be filed within five (5) days after setting the case for trial provided, that where a cause is remanded for a new trial by the Supreme Court, such application must be filed not later than ten (10) days after the party has knowledge that the cause is ready to be set for trial.
>
> "Provided, however, that if the applicant first obtains knowledge of the cause for change of venue from the judge or from the county after the time above limited, he may file the application, which shall be verified by the party himself, particularly alleging when the cause was first discovered, how it was discovered, the facts showing the cause for change, and why such cause could not have been discovered before by the exercise of due diligence. Any opposing party shall have the right to file counter-affidavits on such issue within ten (10) days, and *after a hearing on the motion,* the ruling of the court may be reviewed only for abuse of discretion." (emphasis added)

In his verified motion, Gibson specifically alleged that he was unable to file the change of venue motion within the 10 days after he entered his not guilty plea because he was unaware of the prejudicial material and unable to communicate with his attorney because of his injuries. He also alleged the material, a newspaper article and television news report, contained inflammatory statements by three people: Betsy Greene, the deputy prosecutor assigned to his case, Larry Mason, and Shirley Lawrence, the mother of the victim in an earlier fatal crash involving an intoxicated Gibson. Gibson alleged the three stated he had gotten off easy in his earlier conviction, and that the judge in the earlier case had failed to see justice done.

The State did not respond to the allegations. The trial court, despite the State's failure to respond, denied Gibson's motion without a hearing.

By the express language of C.R. 12, Gibson should have been afforded a hearing in order to introduce evidence on the issue of whether his motion was timely filed as well as the issue of whether the news reports had so prejudiced the community as to have rendered it impossible for him to have received a fair trial. In *Hanrahan v. State* (1968), 251 Ind. 325, 241 N.E.2d 143, our supreme court, construing the predecessor to C.R. 12, held that it was an abuse of discretion for a trial court to deny a motion for change of venue without holding a hearing. In a case concerning change of venue from a judge—which is also governed by the provisions of C.R. 12—this court held that the requirement of a hearing is mandatory, and that failure to grant a hearing was reversible error, *Wilson v. State* (1984), Ind.App., 472 N.E.2d 932 (citing *Otte v. Tessman* (1981), Ind., 426 N.E.2d 660, in which the supreme court held that, under T.R. 56(c), the requirement of a hearing not less than ten days after service of a summary judgment motion was mandatory.) Thus, when the trial court summarily denied Gibson's motion, it committed a manifest abuse of discretion and reversible error.

The State asserts the trial court's error was harmless because the record of *voir dire* demonstrates the jury which heard the case was not prejudiced by the newspaper article and television news story. The State notes our supreme court has held, in several instances, that the denial of a motion for change of venue will be affirmed if the record on *voir dire* demonstrates the jury was not prejudiced against the defendant. *See Lindsey v. State* (1985), Ind., 485 N.E.2d 102; *Harris v. State* (1985), Ind., 480 N.E.2d 932; *Kappos v. State* (1984), Ind., 465 N.E.2d 1092. These cases are not controlling here. In every case in which the supreme court has applied this rule, the defendant had been afforded an opportunity to present evidence in order to prove his allegations of prejudice. Here, Gibson was never given that opportunity.

It is not enough to say *voir dire* indicated the jury was free of prejudice.[1] If we accept the State's view, we would effectively reverse a line of cases extending from *Hanrahan* through *Wilson.* The language of C.R. 12 mandating a separate hearing before trial is clear and unambiguous. If we were to hold that a trial court may summarily overrule the change of venue motion and require the defendant to establish on *voir dire* that the jury was prejudiced by pretrial publicity, the impact of our decision would be either to amend or repeal the rule itself. This we cannot do.

*Lindsey, Harris,* and *Kappos* merely stand for the proposition that, where the trial court has made an arguably erroneous decision based on the information available at the venue hearing, its decision can be upheld if *voir dire* demonstrates the jury was not prejudiced. These cases do not support the proposition that the trial court does not abuse its discretion by depriving the defendant of his right to a venue hearing if, later at the trial, the defendant fails to prove that the jury was prejudiced.

ISSUE II. *Chain of Custody*

Gibson argues the trial court erroneously admitted the results of the BAC test because the state failed to demonstrate an adequate chain of custody. He claims the chain was inadequate because neither Mason or any of the hospital personnel initialed the vial of Gibson's blood before the technician who performed the BAC test received it.

We find this argument meritless. In *Orr v. State* (1984), Ind.App., 472 N.E. 2d 627, the defendant advanced a similar argument. He claimed there was an insufficient chain of custody to admit the results of his BAC test because the vial of blood containing the sample used for the test was marked only with a last name and not with his first name or patient number. Furthermore, the State could not account for every

1. The record reveals the defendant asked two of the prospective jurors if they were aware of the pretrial publicity. Neither had seen the allegedly prejudicial material.

person who handled the vial between the time it was drawn and the time the test was performed. Our court held that the State had established a sufficient chain of custody, noting:

> "However, it is not necessary to account for every minute or every hand through which the sample passes. A proper showing requires only the production of evidence from which the trial court may reasonably conclude that the specimen passed through time and various hands in a relative undisturbed fashion to the point where it is subjected to analysis."

*Id.* at 630 (citing *Fendley v. Ford* (1984), Ind.App., 458 N.E.2d 1167; *Orr v. Econo-Car of Indianapolis, Ind.* (1971), 150 Ind. App. 411, 276 N.E.2d 524.) The court further stated:

> "The law does not require that the proponent account for 'every hand through which the sample passes.' *Fendley v. Ford, supra,* 458 N.E.2d at 1169. *The chain of custody is established if the court may reasonably conclude from the evidence that the specimen passed through time and various hands in a relatively undisturbed fashion to the point where it is subjected to analysis. Id.* The record reveals that the time which lapsed between the taking of the sample in the emergency room and the receipt of the sample in the chemistry lab was, at most, fifteen minutes. Nurse Richmond testified that she was present when the blood was drawn and injected into the presealed vial. Carey received the vial—seal unbroken—a few minutes later in the chemistry lab. *There is no evidence of tampering, mistake, or contamination. Therefore, the evidence here clearly established a proper chain of custody." Id.* at 632. (emphasis added)

Here, every person who handled the blood vial from the time Nurse Klink drew the sample from Gibson's arm through the time Sheryl McNaughton performed the BAC testified that the vial was not tampered with while it was in his or her possession. Additionally, Sergeant Mason, who accompanied the blood sample from the emergency room to the lab where McNaughton ran the test, testified that no one tampered with the sample. The sample itself was clearly marked with Gibson's name and hospital number. We find these facts clearly establish a sufficient chain of custody; indeed, it is difficult for us to conceive of facts which would forge a stronger chain.

ISSUE III. *Probable Cause*

Gibson also challenges the admission of the BAC test results because he claims Sergeant Mason did not have probable cause to order the hospital personnel to take a blood sample and perform a BAC test. We do not agree.

Probable cause exists when an officer has knowledge of facts and circumstances which would lead a reasonably prudent person to believe a crime had been committed, and that seizable property can be found at the place or on the person to be searched. *Woods v. State* (1987), Ind.App., 514 N.E. 2d 1277 (citing *Carroll v. United States* (1925), 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543). In *Zimmerman v. State* (1984), Ind. App., 469 N.E.2d 11, this court observed that an officer had probable cause to order a sample be taken for a BAC test "based on information from Officer Ray that [Zimmerman] smelled strongly of alcohol and on his own observation of a half-full quart bottle of beer in [Zimmerman's] car at the scene of the accident." 496 N.E.2d at 17. The opinion also noted that BAC tests in such instances were allowed without resort to a warrant because the evidence—alcohol in the blood—would be destroyed by the defendant's normal metabolic processes.

■ Contrary to Gibson's assertions, this case falls squarely within the rule announced in *Zimmerman.* Sergeant Mason saw the one vehicle accident had occurred on dry pavement. He saw at least one empty beer bottle in the truck and, most importantly, he was informed by Kenneth Burwick, the first responder who treated Gibson, that Gibson smelled strongly of alcohol. These facts were sufficient to lead a reasonable person to believe that Gibson was driving while intoxicated, and that a blood test would reveal a BAC in

excess of the statutory limit. The trial court did not err.

Because we remand for a new trial, we need not address Gibson's claimed sentencing errors, and we need not address his claim that the evidence was insufficient to sustain his conviction except to note that the State produced evidence sufficient to show he was driving a truck at a time when his blood contained more than .257 per cent by weight of alcohol. The trial court did, however, commit reversible error and an abuse of discretion when it did not grant a hearing on Gibson's change of venue motion. For this reason, and this reason alone, we reverse and remand for a new trial.

Reversed and remanded.

RATLIFF, C.J., and CONOVER, J., concur.